# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| FRESHUB, INC., a Delaware Corporation, and FRESHUB, LTD., an Israeli Limited Liability Company, | ) ) ) | Case No.  6:19-cv-388-ADA |
| | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| AMAZON.COM, INC., a Delaware Corporation, AMAZON DIGITAL SERVICES, LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET, INC., a Texas Corporation, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR
## FAILURE TO ALLEGE INFRINGEMENT OF A PATENTABLE CLAIM

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com


Dated: September 3, 2019

John Palmer
Texas Bar No. 15430600
palmer@namanhowell.com
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Fax: (254) 754-6331

*Attorneys for Plaintiffs,*
FRESHUB, INC. and FRESHUB, LTD.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ...................................................................................................................... 4

I.   The Freshub Patent Claims are Patent Eligible Under Step 1 of *Alice* ............................... 4

     A.   The '153 Patent ...................................................................................................... 5

     B.   The '810 Patent ...................................................................................................... 8

     C.   The '408 Patent ...................................................................................................... 10

     D.   The '094 Patent ...................................................................................................... 12

II.   The Freshub Patent Claims Contain Inventive Concepts that Provide Tangible Benefits and are Thus Patent Eligible Under Step 2 of *Alice* ............................................ 13

III.   Defendants' Motion Is Not Made In Good Faith Given the Lack of Analysis ................. 16

     A.   Defendants Do Not Attempt To Meet Their Burden of Proof ................................... 16

     B.   Defendants' Motion Lacks Factual and Legal Support ............................................ 17

IV.   Defendants' Motion Is Infirm Due To A Failure To Provide Claim Construction ............ 19

CONCLUSION.................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shade Software, Inc.*,
    882 F.3d 1121 (2018) ................................................................................................19

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ..................................................................................... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) ..............................................................................7, 15

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ................................................................................19

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ....................................................................13, 15, 20

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ......................................................................... *passim*

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ................................................................................13

*Cronos Techs., LLC v. Expedia Inc.*,
    No. 13-1538, 2015 WL 5234040 (D. Del. Sept. 8, 2015) .........................................17

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ..........................................................................4, 6, 16

*Eceipt LLC v. Homegoods, Inc.*,
    No. 9-cv-00032-ADA, Slip Op., Doc. No. 25 (W.D. Tex. May 20, 2019) ..........................20

*Elec. Power Grp. v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ................................................................................18

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1334 (Fed. Cir. 2016) ..........................................................................13, 17

*ESW Holdings, Inc. v. Roku, Inc.*,
    C.A. No. 6:19-CV-000444-ADA, Slip Op. Doc. No. 16 (W.D. Tex. May 13,
    2019) .........................................................................................................................15

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ................................................................................20

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ....................................................................5, 7

*IPA Techs., Inc. v. Amazon.com, Inc.*,
   307 F. Supp. 3d 356 (D. Del. 2018) ....................................................................19

*Match Group, LLC v. Bumble Trading Inc.*,
   No. 6:18-CV-00080-ADA, Slip Op., Doc. No. 46 (W.D. Tex. Dec. 18,
   2018) ....................................................................18

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ....................................................................4

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
   827 F.3d 1042 (Fed. Cir. 2016) ....................................................................16

*Thales Visionix Inc. v. United States*,
   850 F.3d 1343 (Fed. Cir. 2017) ....................................................................9

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
   675 F. App'x 1001 (Fed. Cir. 2017) ....................................................................6, 19

*TriPlay Inc. v. WhatsApp Inc.*,
   No. 13-cv-01703-LPS, 2015 WL 1927696 (D. Del. Apr. 28, 2015) ....................................................................10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ....................................................................18

*Vehicle IP, LLC, v. AT&T Mobility LLC*,
   C.A. No. 09-CV-1007-LPS, 2016 WL 5662004 (D. Del. Sept. 29, 2016) ....................................................................20

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017) ....................................................................8

*VOIT Techs., LLC v. Del-Ton, Inc.*,
   757 F. App'x 1000 (Fed. Cir. 2019) ....................................................................18

**Statutes**

35 U.S.C. § 101 ....................................................................4, 5, 17, 20

35 U.S.C. § 282(a) ....................................................................16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................19, 20

## INTRODUCTION

Defendants' Motion should be denied because Freshub, Inc.'s and Freshub, Ltd.'s (collectively "Freshub") Patents present a novel voice processing system, involving concrete and inventive concepts that are directed to technical systems that are uniquely rooted in computer technology.  Each of the Freshub Patent Claims recite specific steps that accomplish the desired result, such as displaying or identifying a set of items based on the novel sequence of receiving a voice command, processing and digitizing that voice command (remotely), and then creating information based on the processing of the digitized voice message.  The inventive concepts of processing and sequencing, which captures more than a result, embody a novel improvement over conventional technology as the idea of digitizing a voice locally and wirelessly sending the voice to a remote computer for specific processing and displaying an itemized list on a user display was unknown at the time of the Freshub Patents inventions.

Defendants' Motion fails for a multitude of reasons, not the least of which is the dearth of serious claim analysis and nonexistent factual investigation.  Indeed, Defendants' conclusory Motion does nothing more than cherry-pick words and phrases out of context from a single claim (ignoring the other 93 Freshub Patent Claims), and repeatedly argue the words and phrases are conventional.  In the three pages of *Alice* Step 1 argument, Defendants make no attempts to do any meaningful analysis of the claimed hardware components, how the hardware is distributed and utilized, or if the specific steps in the claims accomplish a desired result.  Instead, Defendants spend most of its three pages of argument citing distinguishable case law and making the conclusory argument that the Freshub Patent Claims are similar to the claims in the cited cases.  Defendants' Motion ignores key factual issues that directly bear on patent eligibility.  For example, Defendants neglect to inform the Court that patent eligibility issues were addressed during the original prosecution of the '153 Patent, with the Patent Office finding the Claims patent eligible – a fact relevant to this analysis.  For these, and the reasons discussed herein, the Court should deny Defendants' Motion.

1

## FACTUAL BACKGROUND

Freshub filed the Complaint in this action against Defendants on June 24, 2019 for infringement of U.S. Patent Nos. 9,908,153 (the "'153 Patent"), 10,213,810 (the "'810 Patent"), 10,232,408 (the "'408 Patent"), and 10,239,094 (the "'094 Patent") (collectively, the "Freshub Patents").  Doc. No. 1 (the "Complaint").  The technology underlying the Freshub Patents involves novel voice processing and voice interpretation technologies that enable users to use natural voice commands to build and maintain shopping lists and to purchase retail items.  Complaint at ¶ 9.  In particular, the Freshub Patents are directed toward voice processing systems that collect, manage, and display information about items that a user describes and/or are identified within a database and provide a set of items to an item provider. *Id.* at ¶¶ 17, 20, 23, 26.

The Freshub Patents have 94 claims directed to the novel digitization of a voice command at a local computer, which is then sent to a remote computer for specific further processing followed by display back to the user.  Medvidović Decl.[1] at ¶¶ 12-13.  These system and methods solved the problems of not being able to order items based on a spoken command. In order to solve this problem, the Freshub Patents provided novel distributed system that could locally receive a voice command, digitize and wirelessly transmit that voice command, remotely process and analyze the voice command, and then take action remotely based on that processing by displaying specific items identified within the voice command to the user, or identifying and displaying items within a database which corresponded to the items identified within a voice command.  This addressed efficiency concerns as the local computer is likely less powerful than the remote, cloud-based distributed systems that the Freshub Patents leverage.  *Id.*

The specifications of the Freshub Patents disclose the background of the novel voice processing system underlying the inventions described.  Rather than providing known systems that could not readily handle voice commands, the Freshub Patents claim voice processing

---

[1] Declaration of Nenad Medvidovic in Support of Plaintiffs' Opposition to Motion to Dismiss for Failure to Allege Infringement of a Patentable Claim, filed herewith.

systems that leverage the processing power of a remote computer system to process and analyze the voice commands.  In particular, the claimed invention utilizes various hardware components, such as a microphone, wireless network interface, and a digitizer which captures and digitizes the user's voice when the user provides demands on items or other shopping inputs, in creating the novel voice processing system. Ex. 1[2], '153 Patent at 13:56-14:39 (the specifications of the Freshub Patents are identical, so all cites will be to the '153 Patent specification since it issued first).

The voice commands are transmitted for processing wirelessly to a remote computer rather than having the commands processed locally.  *See, e.g.*, *id.*, '153 Patent, Claim 1.  The remote computer then processes the voice commands in a specific way for a specific task – that is, the remote computer (i) translates the digitized voice order and command into text ("the remote system performs voice recognition on the order in order to interpret the spoken order and converts the spoken order into text")(*id.* at 14:9-26), (ii) identifies an item within the converted text ("remote system can optionally match the translated version of the spoken order with a SKU retrieved from a SKU database, which stores SKUs in association with a text description of the corresponding item, and transmit the SKU to the providers")(*id.* at 14:27-34), (iii) adds the item to a list associated with the user who provided the voice command or order ("the remote system receives quotes from the potential providers, and transmits the quotes to the user")(*id.* at 14:35-36), and (iv) causes the identified item to be displayed to the user on an interface ("the remote system receives quotes from the potential providers, and transmits the quotes to the user").  *See, e.g.*, *id.*, Claim 1; *id.* at 14:27-39.  This sequence of steps and events provides a novel solution and implementation beyond the rudimentary systems at the time as it requires specific hardware components of a distributed system and details how to process the voice using those hardware components for a specific application.

Each of the Freshub Patents issued after the Supreme Court's *Alice* decision in 2014. Further, during prosecution of the '153 Patent, the Patent Office confirmed the issued claims'

---

[2] All exhibits are attached to the Declaration of James Hannah, filed herewith.

patent eligibility under 35 U.S.C. § 101.  Ex. 2 (10/26/17 Applicant-Initiated Interview

Summary) ("Proposed claim 4 [issued claim 1] does not warrant a 35 USC 101 'Alice

rejection' and is not deemed invalidated by such."); *see also id.* (Notice of Allowability at 2)

("Claims 4-14 have been reviewed in light of Alice Corporation Pty. Ltd. v. CltweS Bank

International, et al., 573 U.S._ (2014) and are not deemed invalidated by such.").

## ARGUMENT

The Freshub Patents are patent eligible because they are directed to concrete, non-

abstract ideas and contain inventive concepts pertaining to technical systems that are uniquely

and necessarily rooted in computer technology to overcome a problem of computer technology.

*Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014); *DDR Holdings, LLC v. Hotels.com,*

*L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).  Specifically, the Freshub Patents use novel voice

processing interpretation technology not previously available in the art, which enable

companies to sell low cost devices which can reside in the user's home.  The technology uses

advanced computational processing of a user's voice commands that occurs at a remote

computer, which can process a large volume of commands across numerous users quickly and

efficiently, and then take various further actions based on the results of the analysis.

## I.  The Freshub Patent Claims are Patent Eligible Under Step 1 of *Alice*

Under the *Alice* framework, the first step in assessing patent eligibility of the Freshub

Patents is to determine if they are directed toward patent eligible subject matter which does not

include "abstract" ideas.  *Alice*, 134 S. Ct. at 2355.  The Freshub Patent Claims are patent

eligible because they are directed to a specific, non-abstract idea.  This first step requires

looking at the claims in their entirety to determine whether or not the invention as a whole is

directed to an abstract idea.  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299,

1312 (Fed. Cir. 2016) (citation omitted).  A thorough review of the *entirety* of the claims, and

patents, reveals that, taken as a whole, each claim is directed to providing a specific solution to

a real-world problem rooted in computer technology.  The Freshub Patent Claims are not

abstract, *inter alia*, because each one of the Claims "recite specific steps . . . that accomplish

the desired result" rather than the result itself.  *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018).

A.    **The '153 Patent**

A proper review of patent claims for the *Alice* Step 1 analysis requires an examination of the claims, the specification[3] and the prosecution history.  Defendants chose not to do this type, or any type, of meaningful analysis of the Freshub Patents for their Step 1 argument.  The most egregious example of Defendants' dearth of analysis is exemplified by the fact that they made no mention of the Patent Office's Section 101 analysis and conclusion regarding all of the issued claims of the '153 Patent.  During the prosecution of the application leading to the '153 Patent, the Patent Office confirmed patent eligibility of the claims as follows:

> **Proposed claim 4 [issued claim 1] does not warrant a 35 USC 101 '*Alice* rejection' and is not deemed invalidated by such.**
>
> **Claims 4-14 have been reviewed in light of Alice Corporation Pty. Ltd. v. CltweS Bank International, et al., 573 U.S._ (2014) and are not deemed invalidated by such.**

*See* Ex. 2 (emphasis added).  Defendants ignore this entirely in their Motion.

In addition to omitting this relevant analysis in the prosecution history in their Motion, Defendants also omit Step 1 analysis for any of the '153 Patent Claims.  Remarkably, the '153 Patent, which was the first of the four asserted patents to issue, is not even mentioned in Defendants' Step 1 argument.  The '153 Patent has one independent claim and ten dependent claims – each providing additional inventive concepts and descriptions of the computer hardware components, how the hardware is distributed and utilized, and how the specific steps in the claims accomplish a desired result.

Examining independent Claim 1 below, this claim require a voice processing system that is non-abstract on its face and requires more than "functional steps," despite Defendants' contention otherwise.  The voice processing system utilizes computer hardware in a novel manner, as it provides for wireless transmission from a local computer to a remote computer

---

[3] Notably, Defendants only cite three times to the specification of one of the four patents throughout their discussion of Step 1 of *Alice*.  *See* Motion at 6-9.

for processing of an item, or list of items, to be displayed back to the user. *Trading Techs. Int'l, Inc. v. CQG, Inc.,* 675 F. App'x 1001, 1004-05 (Fed. Cir. 2017) (holding claims directed to improvements in existing user interfaces not abstract because claims improved functioning of a known system, and because claims were not directed to a fundamental economic practice).

| Claim 1 of the '153 Patent |
|---|
| A voice processing system comprising: |
| a first system configured to receive user spoken words comprising: |
|     a microphone; |
|     a wireless network interface; |
|     a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation; |
|     a first computer; |
| non-transitory memory that stores instructions that when executed by the first computer cause the first system to perform operations comprising: |
|     receive via the digitizer a verbal order, comprising at least one item, from a user, wherein the verbal order was captured by the microphone and digitized by the digitizer; |
|     immediately transmit, using the wireless network interface, the digitized order to a computer system remote from the first system; |
| the computer system, the computer system comprising: |
|     a networks interface; |
|     a second computer; |
|     non-transitory memory that stores instructions that when executed by the second computer cause the computer system to perform operations comprising: |
|         receive, using the network interface, the digitized order from the first system; |
|         translate at least a portion of the digitized order to text; |
|         identify an item corresponding to the text; |
|         add the identified item to a list associated with the user; |
|         enable the list, including the identified item, to be displayed via a user display. |

This specific type of processing is rooted in computer technology that developed from the Internet and is far from any abstract idea or solution. *DDR Holdings,* 773 F.3d at 1259 (claims "recite a specific way… to solve a problem faced by websites on the internet").

More particularly, the distributed systems of Claim 1 require the use of hardware

components that perform particular tasks including a microphone, wireless network interface, digitizer, network interface, local computer and a remote computer.  Notably, even where "generic components" are used in a patent, when they "operate in an unconventional manner to achieve an improvement in computer functionality" and to "work[] together in a distributed manner," the patent survives any eligibility challenge.  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-02 (Fed. Cir. 2016).  Here the components are not generic and perform tasks in an unconventional manner as they digitize voice commands, and process of those commands remotely, to derive a list of items to be displayed to a user.

Specifically, as this Claim demonstrates, the "local computer" performs certain operations for the initial receiving of the verbal order including through use of the "microphone" to "capture" the verbal order and the "digitizer" component to "digitize" and "convert spoken words into a digital representation."  The "wireless network interface" component is then used to "transmit . . . the digitized order to a computer system remote from the first system" to the remote computer system which then performs the tasks of receiving the digitized order, identifying an item corresponding to that order based on the digitized representation of the order, adding the identified item to a list and enabling that list to be displayed to a user.  *See generally* Ex. 1, Claim 1 of the '153 Patent.

The claimed system therefore provides far more than "voice shopping," as Defendants contend.  Motion at 6.  Rather, the claims disclose specific hardware components of a distributed system (*e.g.*, wireless network interface, digitizer) and describe exactly how to process the voice using those components for a specific application.  *Finjan, Inc.,* 879 F.3d at 1305 (holding claims directed to specific way of processing data, not just the broad idea of processing data, not abstract).  The specification of the patents further demonstrates this, as it identifies how the "remote computer processing system receives, stores and access [] files, which can be received from a plurality of voice recording devices" and uses "identifier[s], such as a unique identifier" to match the text derived from the voice command that is translated.  Ex. 1, '153 Patent at 8:34-55.

As the foregoing demonstrates, the Freshub '153 Patent Claims cover specific and novel systems for utilizing computer hardware in a unique manner to provide for wireless transmission from a local computer to a remote computer for processing of an item, or list of items, to be displayed back to the user, and is thus not directed to an abstract idea.  *Visual Memory LLC v. NVIDIA Corp.,* 867 F.3d 1253, 1259 (Fed. Cir. 2017) (finding claims directed to improved computer memory systems not abstract).

**B.      The '810 Patent**

The '810 Patent contains two independent claims and twenty-seven dependent claims. As with the '153 Patent, Defendants did no *Alice* Step 1 analysis of the '810 Patent Claims.  As demonstrated below, the '810 Patent Claims differentiate from the '153 Patent Claims in several respects.  For example, the '810 Patent Claims include an element related to ordering an item after it has been displayed to the user.

| Claim 1 (System Claim) | Claim 17 (Method Claim) |
|---|---|
| A voice processing system comprising:<br><br>a networks interface;<br><br>a computer;<br><br>non-transitory memory that stores instructions that when executed by the computer cause the computer to perform operations comprising:<br><br>associate a unique identifier with a remote system configured to receive user spoken words, the remote system comprising:<br><br>a microphone, a wireless network interface, a voice output system, and a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation;<br><br>download configuration data to the remote system;<br><br>receive, using the network interface, a digitized order of a user from the remote system;<br><br>translate at least a portion of the digitized order to text;<br><br>use the text, translated from the digitized | A computer-implemented method, the method comprising:<br><br>associating a unique identifier with a remote system configured to receive user spoken words, the remote system comprising:<br><br>a microphone, a wireless network interface, a voice output system, and a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation;<br><br>downloading configuration data to the remote system;<br><br>receiving over a network at a network interface a digitized order of a user from the remote system;<br><br>receiving, using the network interface, a digitized order of a user from the remote system;<br><br>translating at least a portion of the digitized order to text;<br><br>using the text, translated from the digitized order, to identify an item corresponding to the text description; |

| | |
|---|---|
| order, to identify an item corresponding to the text description;<br><br>include the identified item in a set of one or more items associated with the user;<br><br>enable the set of items, including the identified item, to be displayed to the user via a user device different than the remote system; and<br><br>enable the set of items, including the identified item, to be provided to an item provider. | including the identified item in a set of one or more items associated with the user;<br><br>enabling the set of items, including the identified item, to be displayed to the user via a user device different than the remote system; and<br><br>enabling the set of items, including the identified item, to be provided to an item provider. |

The specification discusses how this novel system and method provides for identifying items to be displayed and then subsequently ordered.

> The remote computer system can optionally match the spoken order with a SKU (Stock Keeping Unit, e.g., an identifier, such as a unique numeric identifier associated with a specific product) retrieved from a SKU database. The SKU database optionally stores SKUs in association with a text description of the corresponding item. For example, if the user verbally ordered a cereal by name, the remote computer system translates the name into text or other computer readable form, and matches the text with text stored in association with a SKU (or other identifier) to locate the correct SKU.

Ex. 3, '810 Patent at 8:43-55.

> The remote system can optionally match the translated version of the spoken order with a SKU retrieved from a SKU database, which stores SKUs in association with a text description of the corresponding item, and transmit the SKU to the providers. At state **812**, the remote system receives quotes from the potential providers, and transmits the quotes to the user. At state **814**, the user selects a provider and authorizes placement of the order. At state **816**, the remote system places the order with the selected provider.

*Id.* at 14:31-40.

Thus, in addition to the plethora of additional claim elements in the '810 Patent not addressed by Defendants' Motion in their *Alice* Step 1 argument, including the additional unique elements found in the dependent claims (*e.g.*, use of remote systems – *passim*; identifying items based on user location – Claim 2; weighting purchase history – Claim 6; use of separate digital files to store digitized item descriptions – Claim 14), the fact that the Motion does not address this improvement in computer systems to order items based on voice commands is alone basis for denial of this Motion.  *Thales Visionix Inc. v. United States,* 850

F.3d 1343, 1348-49 (Fed. Cir. 2017) (finding claims regarding a technique for using sensors to more accurately and efficiently track objects were not abstract).

## C.   The '408 Patent

Defendants relied exclusively on Claim 20 of the '408 Patent for their conclusory *Alice* Step 1 analysis, yet Claim 20 is not even representative of all the claims for the '408 Patent, let alone all 94 claims in the Freshub Patents.  The '408 Patent has three independent claims and twenty-seven dependent claims.  Ex. 4.  The dependent claims add additional elements and limitations to the independent claims that preclude using Claim 20 as representative of all the '408 Patent Claims.  *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1365 (Fed. Cir. 2018) (finding that district courts must examine dependent claims if they present "distinctive significance" from independent claims.  "A claim is not representative simply because it is an independent claim."); *see also TriPlay Inc. v. WhatsApp Inc.,* No. 13-cv-01703-LPS, 2015 WL 1927696, at *6 (D. Del. Apr. 28, 2015) (denying motion to dismiss for claims where defendant "provided little analysis as to whether" two allegedly representative claims were in fact representative of the remaining claims and where there were "real differences among the claims.").

Moreover, Claim 20 of the '408 Patent differs from the independent claims of the other asserted patents.  For example, as shown below, comparing Claim 1 of the '153 Patent to Claim 20 of the '408 Patent demonstrates significant differences between the claims.  Because the claims originate from a related specification, the technology is likewise related, but the claims are different.  Just a quick review of these claims show variations in the claimed computer systems (first computer and second computer), different/additional structural elements claimed (non-transitory memory, processing system), and specified ordered elements. The independent claims form the '810 and '094 Patents provide even further differentiations between the Freshub Patents.

| Claim 1 of the '153 Patent | Claim 20 of the '408 Patent |
|---|---|
| A voice processing system comprising: <br><br> a first system configured to receive user spoken words comprising: | A computer-implemented method, the method comprising: <br><br> receiving over a network at a network interface a |

| | |
|---|---|
| a microphone; | digitized order of a user from a remote system configured to receive user spoken words, the remote system comprising a microphone, a wireless network interface, and a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation; |
| a wireless network interface; | |
| a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation; | |
| a first computer; | |
| non-transitory memory that stores instructions that when executed by the first computer cause the first system to perform operations comprising: | translating, using a processing system comprising at least one processing device and configured to perform translation of voice orders to text, at least a portion of the digitized order to text; |
| receive via the digitizer a verbal order, comprising at least one item, from a user, wherein the verbal order was captured by the microphone and digitized by the digitizer; | matching, using the processing system, the text, translated from the digitized order, to a text description associated with a unique product identifier; |
| immediately transmit, using the wireless network interface, the digitized order to a computer system remote from the first system; | based at least in part on the unique product identifier associated with the text description matched to the text translated from the digitized order, identifying, using the processing system, an item corresponding to the text; |
| the computer system, the computer system comprising: | |
| a networks interface; | causing the identified item to be placed on an item set associated with the user; and |
| a second computer; | enabling the item set, including at least the identified item, to be displayed via a user display remote from the processing system. |
| non-transitory memory that stores instructions that when executed by the second computer cause the computer system to perform operations comprising: | |
| receive, using the network interface, the digitized order from the first system; | |
| translate at least a portion of the digitized order to text; | |
| identify an item corresponding to the text; | |
| add the identified item to a list associated with the user; | |
| enable the list, including the identified item, to be displayed via a user display. | |

A review of Claim 20 in its full context reveals it is a non-abstract, novel voice processing system, involving concrete and inventive concepts that are directed to technical systems that are uniquely rooted in computer technology.  Rather than a generic voice

processing system for voice shopping as Defendants argue, Claim 20 is directed to a voice processing system that leverages the processing power of a remote computer system to process and analyze the voice commands. In particular, Claim 20 is directed to a method of using a local computer system that contains a variety of specific hardware components, such as a microphone, wireless network interface, and a digitizer which captures and digitizes the user's voice. Instead of processing the voice commands locally, the digitized voice is transmitted to a remote computer where the voice is processed. Not only does the remote computer process the voice, but it does so for a specific task, in a specific way, namely the remote computer translates the digitized order into text, identifies an item within the converted text, adds the item within the text to a list associated with the user, and then causes the identified item to be displayed on a user display. Thus, Claim 20 of the '408 Patent claims significantly more than "processing a voice," but instead provides for a method using specific hardware components of a distributed system and describes exactly how to process the voice using those components for a specific application.

    **D.**    **The '094 Patent**

    The '094 Patent has two independent claims and twenty-two dependent claims. As shown below, the claims in this patent include a structural element, including, *inter alia*, a data store, translation module, and a voice output system. Ex. 5. Defendants entirely ignore this evidence demonstrating that the '094 Patent is concrete.

| Claim 1 | Dependent Claims |
| --- | --- |
| A computer-implemented method, the method comprising: | 2. The computer-implemented method as defined in claim 1, wherein the second computer system further comprises a voice output system. |
| receiving over a network at a first computer system, using a network interface, a digitized spoken user order from a second computer system, | 10. The computer-implemented method as defined in claim 1, the method further comprising identifying a SKU that corresponds to the identified item. |
| the second computer system comprising: | |
| a microphone, a wireless network interface, and a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation, and the second computer | 19. The computer-implemented method as defined in claim 1, the method further comprising: <br><br> receiving the digitized user order from the second computer system immediately |

| | |
|---|---|
| system is configured to transmit the digital representation over the network to the first computer system; | when the user speaks the order; |
| | recording the digitized user order from the user; |
| translating, using a translation module executed by the second computer system, at least a portion of the digitized spoken order to text; | utilizing grammar constrained recognition and/or natural language recognition in translating at least a portion of the digitized spoken order to text; |
| matching the text, translated from the digitized spoken order, to text descriptions of items, wherein the text descriptions of items are stored in a data store; | enabling the list to be provided to the user via a website; |
| | enabling the list to be provided to the user via a telephone; |
| based on at least an identified match, identifying a corresponding item; | enabling the user to edit the list; and |
| adding the identified corresponding item to a list associated with the user; and | enabling the user to place an order for items on the list. |
| enabling the list, including the identified item, to be displayed to the user via a user display. | |

Thus, the '094 Patent Claims are directed to the improvements of computer devices that the Federal Circuit has expressly endorsed as patent eligible. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,* 880 F.3d 1356, 1362-63 (Fed. Cir. 2018) (holding that claims that improved user interface for electronic devices were not abstract). For all of the reasons noted above, and Defendants' lack of any analysis, the Freshub Patent Claims are patent eligible under *Alice* Step 1 because they are directed to a specific, non-abstract idea.

## II.     The Freshub Patent Claims Contain Inventive Concepts that Provide Tangible Benefits and are Thus Patent Eligible Under Step 2 of *Alice*

The Freshub Patent Claims are not abstract and therefore the Court need not reach Step 2 of the *Alice* analysis. Nonetheless, the Freshub Patents' eligibility is further confirmed when "consider[ing] the elements of each claim both individually and 'as an ordered combination'" because the claims contain inventive concepts and are thus patent eligible under Step 2.[4] *Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1334, 1334 (Fed. Cir. 2016); *see also generally Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir.

---

[4] Defendants do not dispute that the Freshub Patent claims include concrete limitations that avoid broad preemption of the field and provide tangible benefits. Motion at 9-14. Defendants solely rely on the contention that the claims "are not inventive," but their superficial Motion lacks any basis for such a claim, as demonstrated below.

2016) ("some inventions' basic thrust might more easily be understood as directed to an abstract idea, but under step two of the *Alice* analysis, it might become clear that the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible")(citation omitted). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer,* 881 F.3d at 1368. The only ***factual*** information related to what is well-understood, routine and conventional to one skilled in the art presented here is the Declaration of Dr. Nenad Medvidović, who explains that the Freshub inventions were not well-understood, routine and conventional.

The specific and concrete limitations of the Freshub Patent Claims include inventive concepts that yield important benefits thus rendering the claims patent eligible under step two of *Alice*. Specifically, the Freshub Patent Claims provide that, when a voice order or command of a user is received, a "digitizer is configured to convert spoken words into a digital representation" and that further a processing system is used to translate the digitized order into text and to match the text to unique product identifiers to enable a list of items to be displayed to a user. This inventive concept of computationally analyzing and processing a digitized voice order was a novel improvement over the conventional technology that did not process voice at all to identify particular items. Medvidović Decl. at ¶¶ 10-15.

In addition to this processing improvement over conventional technology, the Freshub Patent Claims embody the novel idea of digitizing a voice locally and sending the voice to a remote computer for specific processing and displaying an itemized list on a user display, technology that was unknown at the time. *Id*. at ¶¶ 10-11. Tellingly, Defendants do not address the state of the art because, at the time, there was no system that could locally receive a voice command, transmit the voice command wirelessly, remotely process the voice command, and then display specific items within the voice command to a user. *Id*. at ¶¶ 11-12. As such, Defendants' Motion presents ***no*** evidence—much less clear and convincing evidence—that the

Freshub Patents embody technology that is somehow conventional or routine. *Berkheimer,* 881 F.3d at 1368 (finding clear and convincing evidence required); Ex. 6 (Order, *ESW Holdings, Inc. v. Roku, Inc.*, C.A. No. 6:19-CV-000444-ADA, at \*12) (denying motion to dismiss which filed to present evidence supporting *Alice* step-two inquiry, and patentee "sufficiently articulated claim elements that reflect a patentable improvement" to the art).

Defendants also overgeneralize the claims in concluding that they capture "high-level functions." Motion at 11. Yet, Defendants focus on narrowed depictions of the claims reciting only limited portions of the claim language, such as the "receiving," "translating," "identify," and "adding" elements. *Id.* at 3. This misrepresentation disregards the *entirety* of the claims which, as described, includes the intake of voice orders and the distribution and display of select information from those voice orders based on the digitization, processing and translation of the voice commands which includes the use of instructions and items that are stored. This ordered combination and sequencing of the claims provides an inventive concept well beyond just simply "receiving," "translating, "identifying," and "adding." Medvidović Decl. at ¶¶ 10-15.

In particular, as the Federal Circuit has explained, even if the individual components of the claims were known, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Global Internet Servs,* 827 F.3d at 1350. In particular, Freshub Patent Claims "purposefully arrange[]" their components "in an unconventional distributed fashion to solve a particular technological problem." *Amdocs*, 841 F.3d 1301. As the Federal Circuit explained in *Amdocs*, a sequencing limitation requiring that "network usage records [be] processed close to their source before being submitted to a centralized manager" constituted an inventive concept and a signified a "critical advancement over prior art." *Id.* at 1300-01. Here, similarly, the Freshub Patent Claims require that the voice commands that are received are processed remotely – an entirely new approach from conventional technology. Medvidović Decl. at ¶ 12. Therefore, as in *Amdocs*, the Freshub Patent Claims set forth a non-conventional ordered combination that provides a technical

improvement over prior art. *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.,* 827 F.3d 1042, 1050 (Fed. Cir. 2016) (holding claims at issue were directed to a "new and improved technique, for producing a tangible and useful result [and thus] fall[] squarely outside those categories of inventions that are 'directed to' patent-ineligible concepts"); *DDR Holdings,* 773 F.3d at 1259 ("the claimed solution amounts to an inventive concept for resolving this particular internet-centric problem, rendering the claims patent-eligible").

Furthermore, the dependent claims of the Freshub Patents reveal the inventive concepts of the invention. For example, the dependent claims include creating a separate digital file to store the digitized item, requiring a list to be provided via a website, and using a computer system to increase recognition accuracy. Medvidović Decl. at ¶ 15. These additional limitations only further illustrate the concrete nature of the claims as they impose concrete requirements on the voice processing system. *Id*.

Thus, the Freshub Patent claims' novel improvement over the state of the art further demonstrates their patent eligibility. For all of these reasons, the Freshub Patents are patent eligible under Step 2 of *Alice*.

## III.   **Defendants' Motion Is Not Made In Good Faith Given the Lack of Analysis**

### A.   **Defendants Do Not Attempt To Meet Their Burden of Proof**

Defendants bear the burden of establishing that each of the Freshub Patent Claims is invalid by "clear and convincing evidence." 35 U.S.C. § 282(a); *Berkheimer,* 881 F.3d at 1368. The Patent Office had both the *Alice* decision and a significant body of case law – including many of the Federal Circuit cases referenced herein – when it issued the Freshub Patents in 2018 and 2019. The Patent Office *confirmed* the patent eligibility of the '153 Patent specifically during its prosecution. Defendants' challenges ignore the Patent Office's affirmative determinations that the Freshub Patents are non-abstract and directed toward patent-eligible subject matter.

Moreover, Defendants make no meaningful effort to address the claims, attempting to lump the 94 claims across four patents together and limit their Motion to a single claim they

call "representative" without any analysis to support such a claim.  Specifically, Defendants cherry-picked Claim 20 from the '408 Patents (a method claim), and base their entire Motion on the absurd argument that this single claim is representative of 94 claims in the four different Freshub Patents.  As discussed herein, Defendants' superficial Motion demands denial of this issue with prejudice.

### B.     Defendants' Motion Lacks Factual and Legal Support

Defendants failed to provide any clear and convincing evidence that the Freshub Patent claims are abstract.  Instead, Defendants point to their generalized characterization of the claims and ignore the specific inventions and concrete solutions that the Freshub Patents provide in mischaracterizing them as claiming only "functional steps."  In doing so, Defendants rely on inapposite case law and disregard the Supreme Court's caution against taking a "high level" view of claims as it could lead to all inventions being deemed abstract. *Alice,* 134 S. Ct. at 2354; *Enfish,* 822 F.3d at 1337 ("claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule").

Defendants inappropriately rely on what they contend to be a "representative" claim (Claim 20 of the '408 Patent) of the ***four*** asserted patents and 94 total claims without any analysis or justification and while disregarding the differences among the asserted claims. Where, as here, Defendants focus almost exclusively on one independent claim, though the motion is directed to several other claims, the Court should consider several factors including: (1) whether the non-representative claims are adequately represented by the representative claim; (2) whether there are issues of claim construction that must be decided before resolving the motion; and (3) are there any set of facts that could be proven that would result in a determination that one or more of the claims are eligible. *Cronos Techs., LLC v. Expedia Inc.*, No. 13-1538, 2015 WL 5234040, at *2 (D. Del. Sept. 8, 2015).  As shown above, the unequivocal differences among the independent and dependent claims, which defendants ignore entirely, demonstrate that Claim 20 of the '408 Patent is not a representative claim of

the other asserted claims.  *Berkheimer,* 881 F.3d at 1365 ("A claim is not representative simply because it is an independent claim.")

As described above, the Freshub Patents provide more than "functional steps" – rather, they claim a specific approach of voice processing through digitizing a voice with the use of specific hardware and transmitting that digitized representation wirelessly to ultimately display selected information to a user.  The Freshub Patents identify specific technologies that address specific issues in computer technology, including the previous inability to allow a user's voice command to be digitized and wirelessly transmitted to a remote computer for robust processing to identify items within the command and display them back to the user.  Freshub's innovations created efficiencies in cost and improved processing speed.  Medvidović Decl. at ¶ 12.  These improvements over the art confirm that the Freshub Patents go far beyond merely providing "functional steps."  *See* Ex. 7 (Dec. 18, 2018 Order, *Match Group, LLC v. Bumble Trading Inc.*, No. 6:18-CV-00080-ADA, at *10) (non-abstract improvements in user interface technology demonstrated by adding swiping gesture to clear an undesirable dating profile card were sufficient to demonstrate patent-eligibility under *Alice* Step 1).

Defendants rely on cases that address claims that were found to be patent ineligible because they did not claim more than functional steps.  *See VOIT Techs., LLC v. Del-Ton, Inc.,* 757 F. App'x 1000, 1003 (Fed. Cir. 2019) (asserted patent only used "conventional compression techniques to carry out the claimed invention"); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1337 (Fed. Cir. 2017) (explaining that the claim "requires functional results . . . but does not sufficiently describe how to achieve these results in a non-abstract way"); *Elec. Power Grp. v. Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016) (claims at issue were drawn to using computers as tools to solve a power grid problem, rather than improving the functionality of computers and computer networks).  These cases are unlike here because the Freshub Patents provide for more than "conventional [] techniques" or using computers as tools to solve a problem as they improved upon conventional technology through their voice processing digitization and translation and processing of the digitized voice

messages and commands through the use of both local and remote computers and devices.

Similarly unavailing is Defendants' reliance on *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) and *IPA Techs., Inc. v. Amazon.com, Inc.,* 307 F. Supp. 3d 356 (D. Del. 2018).  In particular, in *Apple*, the Federal Circuit explained that the claims at issue were solely "directed to certain functionality" and "not directed to a specific improvement in the way computers operate."  842 F.3d at 1241.  Here, the Freshub Patents improve the way computers operate as exemplified by the specific type of voice processing they claim which is rooted in computer technology born from the Internet – that is, the wireless transmission from a local computer to a remote computer for processing an item to be displayed back to the user.  *IPA Techs.* also fails to support Defendants' Motion as "nothing in the claims [at issue] disclose[d] how the[] components achieve[d] the goal of the method."  307 F. Supp. 3d at 369 (citation omitted).  By contrast, here, the Freshub Patents specifically provide *how* the voice processing is digitized, remotely through the hardware components of the system, to ultimately display certain information, from the translated voice message, to the user.  Thus, the Freshub Patents provide a non-abstract process that claims "specific technologic modifications to solve a problem or improve the functioning of a known system generally [which therefore] produce[s] patent-eligible subject matter."  *Trading Techs. Int'l, Inc.*, 675 F. App'x at 1004-05.

## IV.   <u>Defendants' Motion Is Infirm Due To A Failure To Provide Claim Construction</u>

To the extent Defendants' Motion is not denied with prejudice, claim construction would be appropriate as it is unclear how Defendants are construing certain claims to make their conclusory allegation that Claim 20 of the '408 Patent is "representative."  *Aatrix Software, Inc. v. Green Shade Software, Inc.*, 882 F.3d 1121, 1125 (2018) (finding claim construction may be necessary for determining patent eligibility).

Furthermore, as discussed above and in Dr. Medvidović's Declaration, Defendants' Motion, at most, present factual issues and disputes that are not appropriate for resolution in a dispositive motion to dismiss.  *Id.*  (appropriate to determine patent eligibility at Rule 12(b)(6) stage "only when there are no factual allegations that, taken as true, prevent resolving the

19

eligibility question as a matter of law.  Indeed, we have explained that "plausible factual allegations may preclude dismissing a case under § 101 where, for example, `nothing on th[e] record ... refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'")(citing *FairWarning IP, LLC v. Iatric Sys., Inc.,* 839 F.3d 1089, 1097 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs,* 827 F.3d at 1352)).

Further, Defendants' Motion presents material factual issues that preclude dismissal at the pleadings stage.  In particular, Defendants' contentions that the "the patent claims' recitation of several computing devices . . . are merely conventional computing components described as performing claimed conventional functions" (Motion at 10) and that "dependent claims recite conventional and well-known elements" (*id.* at 13) are factual inquiries that are inappropriate for resolution in a motion to dismiss.  Ex. 8 (May 20, 2019 Order, *Eceipt LLC v. Homegoods, Inc.*, No. 9-cv-00032-ADA, at *12) (holding that the patent at issue contains inventive concepts, and defendants simply raise questions of fact which preclude granting a motion a dismiss); *see also Vehicle IP, LLC, v. AT&T Mobility LLC,* C.A. No. 09-CV-1007-LPS, 2016 WL 5662004, at *6 (D. Del. Sept. 29, 2016) ("Defendants' contention that limitations such as those just discussed require only 'conventional' use of 'generic' technology . . . raises factual issues that the Court cannot resolve on the record before it.").  Thus, while Defendants have failed to meet their burden of establishing with any "clear and convincing evidence" any purported patent ineligibility, at most they have created a factual dispute that cannot be resolved with a dispositive motion to dismiss.

## **CONCLUSION**

Defendants filed this Motion without any serious analysis – essentially, they "shot their shot" at this issue.  It would be unfair and prejudicial for Defendants to get another bite of the apple on this issue.  For these reasons, Freshub respectfully requests that the Court deny Defendants' Motion with prejudice.

Respectfully submitted,

Dated: September 3, 2019

/s/ John P. Palmer
John Palmer
Texas Bar No. 15430600
palmer@namanhowell.com
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Fax: (254) 754-6331

Paul J. Andre (*Pro Hac Vice*)
Lisa Kobialka (*Pro Hac Vice*)
James Hannah (*Pro Hac Vice*)
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiffs,*
Freshub, Inc. and Freshub, Ltd.

**CERTIFICATE OF SERVICE**

The foregoing document was filed electronically on September 3, 2019, with the Clerk of Court using the Court's CM/ECF system, which will send a Notice of Electronic Filing on counsel of record for all other parties who have appeared in this action on the date of such service.

*/s/ John Palmer*
John Palmer