**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation, <br><br> Defendants. | Case No. 1:19-CV-00885-ADA <br> **Public Version** |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION ------------------------------------------------------------------- 1

II.     FACTUAL BACKGROUND ---------------------------------------------------- 1

        A.      The Asserted Patents------------------------------------------------------- 1

        B.      The Accused Technology -------------------------------------------------- 4

III.    ARGUMENT------------------------------------------------------------------------- 6

        A.      The accused Amazon devices and applications do not and cannot
                directly infringe the asserted claims as a matter of law --------------------- 6

        B.      Amazon does not directly infringe the system claims of the '153 patent
                because it does not "make" or "use" the claimed system under
                *Centillion*----------------------------------------------------------------------------10

                1.      Amazon does not "make" the claimed systems --------------------- 12

                2.      Amazon does not "use" the claimed systems------------------------ 13

IV.     FRESHUB PUTS FORTH NO EVIDENCE TO MEET ITS
        BURDEN TO PROVE INFRINGEMENT BY WHOLE FOODS ----------------- 15

CONCLUSION ------------------------------------------------------------------------------------------- 16

# TABLE OF AUTHORITIES

*Cases:*                                                                              *Page(s):*

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ------------------------------------------------------------------------------- 15

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011) ------------------------------------------------------------*passim*

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005) -------------------------------------------------- 7, 10, 12-13

*epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*,
   492 F. Supp. 2d 608 (E.D. Tex. June 26, 2007)---------------------------------------------7, 10

*Grecia v. McDonald's Corp.*,
   724 F. App'x 942 (Fed. Cir. 2018) --------------------------------------------------------------11

*Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
   589 F.3d 1179 (Fed. Cir. 2009) ------------------------------------------------------------------15

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017) ------------------------------------------------------------- 11, 14

*IPVX Pat. Holdings, Inc. v. Voxernet LLC*,
   No. 5:13-cv01708 HRL, 2014 WL 3074296 (N.D. Cal. July 3, 2014)---------------------- 15

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ------------------------------------------------------------------15

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
   983 F.3d 1367 (Fed. Cir. 2021) -------------------------------------------------------- 7, 10, 15

## TABLE OF EXHIBITS

Exhibits to the Declaration of Ravi R. Ranganath in Support of Defendants' Motion for Summary Judgment of Noninfringement are cited herein as noted in the below table.

| Exhibit | Description | Short Cite |
|---|---|---|
| 1 | U.S. Patent No. 9,908,153 | '153 patent |
| 2 | U.S. Patent No. 10,213,810 | '810 patent |
| 3 | U.S. Patent No. 10,232,408 | '408 patent |
| 4 | U.S. Patent No. 10,239,094 | '094 patent |
| 5 | U.S. Patent No. 9,821,344 | '344 patent |
| 6 | Rebuttal Expert Report of Dr. Michael T. Johnson | Johnson Reb. Rep. |
| 7 | Expert Report of Dr. Nenad Medvidović Regarding Infringement by Amazon.com, Inc., Amazon.com Services, LLC (Formerly Known as Amazon Digitial Services, LLC), Prime Now, LLC, and Whole Foods Market Services, Inc. of U.S. Patent Nos. 9,908,153; 10,213,810; 10,232,408; and 10,239,094 | Medvidović Rep. |
| 8 | Expert Report of Aaron Striegel, Ph.D. | Striegel Rep. |
| 9 | Transcript of the deposition of Gerry D'Souza, taken December 11, 2020 | D'Souza Dep. Tr. |
| 10 | Transcript of the deposition of Nenad Medvidović, taken March 19, 2021 | Medvidović Dep. Tr. |
| 11 | Expert Report of Marcus D. Reading | Reading Rep. |

## I.      INTRODUCTION

Amazon and Whole Foods seek summary judgment of no direct infringement on three separate and straightforward grounds:

*First*, Freshub does not, and cannot, show that the accused technologies (Amazon Echo, Fire TV, and Fire Tablet devices and the Amazon and Alexa mobile apps) meet each element of any asserted claim.  Freshub maps elements of each asserted claim to voice processing services performed by Alexa, which .  Freshub cannot show infringement by the devices and applications as a matter of law.

*Second*, Freshub cannot show that Amazon "makes" or "uses" the claimed systems under the Federal Circuit's opinion in *Centillion Data Systems, LLC v. Qwest Communications International, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).  Amazon does not make or use the claimed systems because the *user* must combine components and put them into service by connecting an Amazon device to the internet, registering it for operation with Alexa, and issuing voice commands, entirely at their discretion and outside the control of Amazon.

*Third*, Freshub cannot establish infringement by Whole Foods because ▮▮▮▮▮.  Moreover, ▮▮▮▮▮—a requirement of each asserted claim—and therefore cannot infringe as a matter of law.

## II.     FACTUAL BACKGROUND

### A.       The Asserted Patents

In this case, Freshub alleges infringement of four U.S. patents:  Nos. 9,908,153 (the "'153 patent"), 10,213,810 (the "'810 patent"), 10,232,408 (the "'408 patent"), and 10,239,094 (the "'094 patent") (collectively, the "asserted patents").  (Dkt. 30 ("FAC"); *see also* Exs. 1-4

(Patents).)  The asserted patents each claim priority to the same application, later issued as U.S. Patent No. 9,821,344 (the "'344 patent" (Ex. 5)), and share a common specification and title.  (FAC ¶ 11, 15, 18, 21, 24; Ex. 6 ("Johnson Reb. Rep.") at ¶ 15.)

The specification describes that perishable items with "faintly or poorly printed" expiration dates were "often densely packed into a refrigerated storage unit," preventing users from "conveniently monitor[ing] the expiration dates." ('153 patent at 1:20-26.)  The patents propose a system for reading tags on refrigerated items and prompting the user to use or replace the items before their expiration dates.  (*Id.* at 1:35-37; Abstract.)  Accordingly, the '344 patent, which Freshub does not assert here, claims an "electronic refrigeration system" that captures digital images of the stored refrigerated items and alerts users to any upcoming expiration dates.  ('344 patent, cls. 1-7.)  Though the specification focuses on this electronic refrigeration system, it also includes a high-level description of a voice ordering system featuring "a voice recording device" for capturing digitized orders and "[a] remote computer processing system [that] receives, stores, and accesses" digitized voice orders, "match[es] the user's spoken order with a product," provides quotes from vendors, and allows the user to place an order.  ('153 patent at 8:17-9:14; *see also id.* at Fig. 8 and 13:56-14:44.)  The claims Freshub asserts here relate to this voice ordering system.

Freshub asserts claims 1, 4-7, and 9-11 of the '153 patent; claims 1-16 of the '810 patent; claims 1-8, 11-20, 27, and 30 of the '408 patent; and claims 20-24 of the '094 patent.  (Ex. 7 ("Medvidović Rep.") at ¶ 18.)  Of these, claim 1 of the '153 patent, claim 1 of the '810 patent, claims 1, 20, and 30 of the '408 patent, and claim 20 of the '094 patent are independent.  (*See* Exs. 1-4 (Patents).)  The asserted claims refer to two systems:  a system local to the user that includes a microphone and digitizer; and a system remote from the user that includes a computer and non-transitory memory with a voice processing program.  (Johnson Reb. Rep. at ¶ 18.)

Claim 1 of the '153 patent and claim 1 of the '408 patent, reproduced below, are

representative of the independent claims:

| '153 patent, cl. 1 | '408 patent, cl. 1 |
| --- | --- |
| A *voice processing system* comprising:<br>a *first system* configured to receive user spoken words comprising:<br>a microphone;<br>a wireless network interface;<br>a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation;<br>*a first computer*;<br>non-transitory memory that stores instructions that when executed by the first computer cause the first system to perform operations comprising:<br>*receive via the digitizer a verbal order*, comprising at least one item, from a user, wherein the verbal order was captured by the microphone and digitized by the digitizer;<br>immediately transmit, using the wireless network interface, the digitized order to a computer system remote from the first system;<br>the computer system, the computer system comprising:<br>a networks interface;<br>a second computer;<br>non-transitory memory that stores instructions that when executed by the second computer cause the computer system to perform operations comprising:<br>receive, using the network interface, the digitized order from the first system;<br>*translate at least a portion of the digitized order to text*;<br>*identify an item corresponding to the text*;<br>*add the identified item to a list* associated with the user;<br>*enable the list, including the identified item, to be displayed* via a user display. | A *voice processing system* comprising:<br>a networks interface;<br>a *computer*;<br>non-transitory memory that stores instructions that when executed by the computer cause the computer to perform operations comprising:<br>*receive, using the network interface, a digitized order of a user* from a remote system configured to receive user spoken words,<br>the *remote system* comprising a microphone, a wireless network interface, and a digitizer coupled to the microphone, wherein the digitizer is configured to *convert spoken words into a digital representation*;<br>*translate at least a portion of the digitized order to text*;<br>*match the text, translated from the digitized order, to a text description stored in a database* comprising text descriptions of items and associated unique product identifiers;<br>*based at least in part on the identified match of the text translated from the digitized order to the text description stored in a database, identify an item corresponding to the text description*;<br>*add the identified item to a set of items* associated with the user; and<br>*enable the set of items, including the identified item, to be displayed* via a user display. |

As shown by the highlighting, both claims are directed to a "voice processing system" with a front-

end system that *receives* a verbal order from a user and sends the order to a back-end system, which *converts* the order to text, uses the text to *identify* an item corresponding to the order, *e.g.* by matching the text to text descriptions of items in a database, and *adds* the identified item to a set or list for display to the user.

**B.    The Accused Technology**

Freshub accuses Amazon's Echo, Fire TV, and Fire Tablet devices, as well as the Amazon and Alexa mobile apps. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

Alexa is a voice-based virtual assistant that interacts with users through Alexa-enabled devices, like the accused Echo smart speakers, to answer questions, play music, stream real-time information, or perform thousands of other tasks called "skills."  (Johnson Reb. Rep. at ¶ 43.) ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

The accused Amazon devices have a wide variety of capabilities.  Echo devices are smart speakers that allow users access to the Alexa voice assistant.  (*See, e.g.*, *id.* at ¶ 65.)  Fire TV devices are media streaming devices that, when connected to a television, allow users to stream video and music content, play games, browse the web, and download and use apps, none of which requires Alexa.  (*See, e.g.*, *id.* at ¶¶ 71-75.)  Fire Tablet devices are mobile devices with a multi-touch color screen, and like Fire TV devices, allow users to download and run apps and stream videos or music, all of which can be done without Alexa.  (*See, e.g.*, *id.* at ¶¶ 78-79.)  The only common feature of the accused devices relevant to this case is their ability to access the Alexa voice service.  (*See id*. at ¶¶ 91-96.) ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████

The Amazon and Alexa mobile apps are applications available for download and use on third-party devices (*e.g.*, iPhones and Android smart phones).  (Johnson Reb. Rep. at ¶¶ 81, 86.) The Amazon mobile app allows users to browse, search, get product details, read reviews, and purchase millions of products from the Amazon store, all through a touch-screen interface on a mobile device.  (*Id.* at 81.)  In addition to shopping, the Amazon app also allows users to update account information, review purchase history, and track their orders.  (*Id.* at 82.)  It also has a microphone icon that, when selected, allows users to give voice commands to Alexa.  (*Id.* ¶ 84.) The Alexa app allows users of third-party mobile devices, such as mobile phones, access to Alexa and all of its features.  (*Id.* at 86.)  The Alexa app also allows users to set up their Alexa-enabled devices, listen to music, create shopping lists, get news updates, and more.  (*Id.* at 87.)

Freshub alleges that the accused Amazon devices and applications ████████████████████



But Alexa's complex speech recognition and voice processing—including the functions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See id.* at ¶ 85.)

Though Whole Foods is named as a defendant, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This makes sense because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While a user can *view* an Alexa shopping list from the Whole Foods Market app, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## III.    ARGUMENT

The Court should grant summary judgment of no direct infringement on each of the following grounds:  (1) Freshub has not shown, and cannot show, that the accused devices and applications meet each and every limitation of any asserted claim; (2) Amazon neither puts the accused systems into service nor combines all elements of the claimed systems, as required to show infringement of the system claims of the '153 patent under the Federal Circuit's opinion in *Centillion*,  631 F.3d at 1284; and (3) Freshub offers no evidence that any Whole Foods product or service infringes the asserted patents.

### A.    The accused Amazon devices and applications do not and cannot directly infringe the asserted claims as a matter of law.

Freshub accuses Amazon's Echo, Fire TV, and Fire Tablet devices, and the Alexa and

Amazon mobile apps ████████████████████████████████████████

████████████████████████████████████████████  Under black-letter

patent law, to prove infringement, "the patentee must show that the accused device contains *each and every limitation* of the asserted claims."  *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021) (emphasis in original); *epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608, 627 (E.D. Tex. June 26, 2007) ("[D]irect  infringement of a device, product, apparatus or system claim occurs only for the person or entity that assembles or employs an apparatus containing each and every limitation of the claim . . . .").  Even if a defendant provides multiple components of a claimed system, the components do not *individually* infringe unless they contain all elements of the claim.  *See, e.g.*, *Centillion*, 631 F.3d at 1288 (rejecting argument that defendant infringed by "build[ing] all of the parts of the system including the client-side software," because "[i]n order to 'make' the system under § 271(a), [accused infringer] would need to combine all of the claim elements"); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (defendant that provided devices that could be assembled by a surgeon into a single infringing device did not directly infringe).  Freshub cannot prove direct infringement as a matter of law.

Each of the asserted independent claims requires a system or method in which a back-end system (*i.e.* a system not local to the user) processes a voice order received from a front-end device or computer.[1]  (Johnson Reb. Rep. at ¶ 18 ("Each of the four patents refers to two computer

---

[1] *See* '153 patent, cl. 1 (reciting "non-transitory memory that stores instructions that when executed by the . . . computer cause the . . . system to perform operations comprising . . . receiv[ing] . . . [a] digitized order from [a user from the remote system]," "translat[ing] at least a portion of the digitized order to text," "us[ing] the text . . . to identify an item corresponding to the text description"); '810 patent, cl. 1 ("non-transitory memory that stores instructions that . . . cause the computer to perform operations comprising . . . associat[ing] a unique identifier with a remote system configured to receive user spoken words"); '408 patent, cl. 1 ("non-transitory memory that stores instructions that when executed by the computer cause the computer to perform operations

systems, including a system local to the user which contains at least a microphone and a digitizer, and a system remote from the user which contains at least a computer and memory with the voice processing program.").)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

comprising . . . receiv[ing] . . . a digitized order of a user from a remote system"); '408 patent, cl. 30 ("Non-transitory memory that stores instructions that . . . cause the computer to perform operations comprising . . . "receiv[ing] a digitized voice communication of a user from a remote system"); '094 patent, cl. 20 ("non-transitory memory that stores instructions that . . . cause the first system to perform operations comprising . . . receiv[ing] over a network . . . a digitized spoken user order from a remote system").)

███████████████████████████████████████████████████████████

█████████████████████████████████████████████

And for the asserted claims of the '408, '810, and '094 patents—which recite only server-side elements and steps[2]—███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████    ███████

███████████████████████████████████████████████████████████

█████████████████

      █████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[2] *See* Johnson Reb. Rep. at ¶ 102 █████████████████████████████████████

███████████████████████.



Because Freshub maps key limitations of each asserted independent claim to the Alexa cloud, the accused Amazon devices and apps cannot include all elements of the asserted claims and cannot infringe as a matter of law. *SIMO Holdings Inc.*, 983 F.3d at 1380; *epicRealm, Licensing, LLC*, 492 F. Supp. 2d at 627; *Centillion*, 631 F.3d at 1288; *Cross Med. Prods., Inc.*, 424 F.3d at 1312.   Amazon is entitled to summary judgment that the accused devices and apps do not directly infringe any of the asserted claims.

### B.      Amazon does not directly infringe the system claims of the '153 patent because it does not "make" or "use" the claimed system under *Centillion*.

Taking every opinion of Freshub's expert Dr. Medvidović as true, no genuine dispute of material fact exists as to infringement of the system claims of the '153 patent.  As discussed above, Freshub does not map all the elements of the asserted claims to a single Amazon device or application.   Instead, it relies on a system consisting of a front-end device or application that captures voice commands and sends them to the cloud and back-end Alexa services that process the voice command.  To create and put such a system into use, a user must subscribe to an Internet service provider (ISP), set up a wireless network using third-party devices and services, connect the accused device to the wireless network, and register their device or application to their Amazon account.  (Johnson Reb. Rep. at ¶ 106.)

And to use Alexa—*e.g.*, to add to a shopping list or purchase an item using voice—the user must

take additional steps to set up an account for service and actually issue a spoken command. (Johnson Reb. Rep. at ¶ 106.)  Freshub's infringement theory thus fails under Federal Circuit law.

The Federal Circuit's opinion in *Centillion* governs where, as here, the patentee asserts infringement of system claims by multiple components possessed by different entities.  *Centillion*, 631 F.3d at 1283-84; *see also Grecia v. McDonald's Corp.*, 724 F. App'x 942, 946 (Fed. Cir. 2018) (*Centillion* applies when "different parties possess[] different claim elements, and no single party possesse[s] each and every claim element").  In *Centillion*, the Federal Circuit held that under § 271(a), to "make" a system for purposes of infringement, a party "would need to combine all of the claim elements."  631 F. 3d at 1288.  And "to 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it."  *Id.* at 1284.  This "requires a party to use each and every element of a claimed system." *Id.* (alteration omitted); *see also Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017).

In *Centillion*, the plaintiff accused Qwest billing systems of infringement.  *Centillion*, 631 F.3d at 1281-82.  These consisted of two parts designed to work together:  "Qwest's back office systems and front-end client applications that a user may install on a personal computer."  *Id.* at 1281.  The Federal Circuit held that Qwest could not directly infringe the system claims because "[t]he customer, not Qwest, complete[d] the system" by providing its own standard computer and installing software on the computer.  *Id.* at 1288.  The facts here are no different.  Freshub accuses a system consisting of a front-end interface—Alexa-enabled devices and applications—designed to connect with the back-end Alexa service.  Just as Qwest could not infringe because the users had to provide a standard computer and install software to connect to the back-end service to complete the accused system, Amazon cannot infringe because users must provide networking equipment, set up their internet connection, and register their devices before they can access Alexa.

11

Amazon neither makes nor uses the accused system under *Centillion*.

### 1. Amazon does not "make" the claimed systems.

Amazon does not "make" the accused systems by combining all claim elements. For example, claim 1 of the '153 patent requires two separate systems: one local to the accused device and another remote from the device. ('153 patent, cl. 1 .) It requires that the "first system" use a wireless network interface to "immediately transmit . . . the digitized order" to the remote second system. (*Id.*; Johnson Reb. Rep. at ¶ 115.) Under Freshub's infringement theory, ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

Without an internet connection and a local wireless network, the first system's "wireless network interface" cannot communicate with the remote second system. And without a user-supplied internet connection, modem, and wireless router, there can be no "transmittal" of the "digitized order" as recited in the claims. (Johnson Reb. Rep. at ¶¶ 115-16.) As Dr. Johnson explains, Amazon does not provide the internet connection necessary for the accused devices to talk to the Alexa cloud. (*Id.* at ¶ 110 ("The internet connection—whether hardwired or wireless, AT&T or Xfinity, DSL or fiber optic—is completely in the control of the end user, not Amazon.").) Nor does Amazon make the WiFi networks that its end users use in their homes. (*Id.*) The end users, not Amazon, set up and authorize interactions between the accused devices, their Wifi networks, and Amazon, all in their own sole discretion. (*Id.* ¶¶ 115-17.) ████████████

████████████████████████ Therefore, Amazon does not "combine all of the claim elements," a requirement for "making" a claimed system under *Centillion*.

These facts are like those of *Cross Med. Prods., Inc.*, 424 F.3d at 1312. There, the Federal Circuit held that surgical implants with an interface that had to be "operatively joined" to a segment of bone could not be directly infringed by the manufacturer because a third party surgeon had to

"actually bring the [relevant part] into contact with bone." *Id.* at 1310. The court rejected the patentee's argument that the alleged infringer "need only make devices that are capable of being converted into infringing devices." *Id.* Like the claim requirement in *Cross Medical* that the implant and the bone must be "operatively joined," here the front end system and the back end system must be operatively communicating for a digitized utterance to be transmitted to the cloud. But it is the *end user* or the user's ISP that provides the internet connection, modem, router, and WiFi network. (Johnson Reb. Rep. at ¶ 114-17.) It is the *end user* who must connect their devices to the ISP-supplied internet. (*Id.* at 115.) It is the *end user* who must create and log into their Alexa account and register the device. (*Id.* at 116.) Here, Amazon does not bring the front-end device and the back-end server into communication, and thus cannot "make" the claimed system.

Nor can Amazon be vicariously liable for actions by end users. In *Centillion*, the Federal Circuit held that Qwest could not be "vicariously liable for the actions of its customers," because the customers did "not act as Qwest's agents as a matter of law nor [were] they contractually obligated by Qwest to act." 631 F.3d at 1288. The Federal Circuit found that even though Qwest provided the accused software and technical assistance to its customers, it was "entirely the decision of the customer whether to install and operate this software on its personal computer data processing means." *Id.* at 1287. Similarly, Amazon's customers decide whether to get an internet connection, link their devices to their Amazon accounts, and use them to add items to a cart or list via voice. Just as in *Centillion*, Amazon's customers do not act as Amazon's agents and are not contractually obligated by Amazon to act in an allegedly infringing manner.

### 2. Amazon does not "use" the claimed systems.

Amazon also does not use the claimed systems of Freshub's patents. To use the claimed systems, Amazon "must put the claimed invention into service, *i.e.*, control the system and obtain benefit from it" and "us[e] all portions of the claimed invention." *Id.* at 1284, 1286. But Amazon

cannot "put the claimed invention into service" because it is the end users that issue voice commands.  Without a speech command issued by the user, there cannot be any "digitized order" transmitted to the back-end system.  In *Centillion*, the court held that it was the user, not Qwest's back-end system, that put into service an "on-demand operation," where a customer seeks particular information by creating queries.  631 F.3d at 1285-87.  Here, similarly, it is the user that put the accused system into service by making voice commands.

In addition, Amazon does not put the claimed system into service because the accused devices and applications cannot connect to the Alexa cloud without a wireless network and internet connection established by the user.  Without these, the "wireless network interface" of claim 1 of the '153 patent cannot "transmit" anything, including the "digitized order" to a "remote" system.  (Johnson Reb. Rep. at ¶ 108-09.) ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████  Amazon also does not control and benefit from the internet connection.  (*Id.* at ¶¶ 110-111); *see, e.g.*, *Intell. Ventures I LLC*, 870 F.3d at 1328-29 (not enough for patentee to show that accused infringer benefits from system as a whole; must show both control over and benefit from each component).  That connection—whether hardwired or wireless, from any number of ISPs, by way of DSL or fiber optic infrastructure—is completely within the control of the user, not Amazon.  (*Id.*)  Amazon also does not control whether, when, and how the end user issues speech commands.  (*Id.*)  Dr. Medvidović offers no contrary opinion.

It is the end users, not Amazon, who put the accused system as a whole into operation; it is the end users, not Amazon, who control the claimed systems; and it is the end users, not Amazon, who benefit from the accused systems.  Thus, it is the end users who use all portions of the claimed system, not Amazon, and Amazon cannot directly infringe the asserted claims.

### C.    Freshub puts forth no evidence to meet its burden to prove infringement by Whole Foods.

Freshub bears the burden of establishing infringement by Whole Foods, and to do so must show that some Whole Foods product or service meets each and every limitation of the accused patents.  *See SIMO Holdings Inc.*, 983 F.3d at 1380; *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) ("an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility . . . by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.").  To meet its burden, Freshub must put forth enough evidence to enable a reasonable jury to reach a decision in its favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  And that, in turn, requires expert testimony establishing that the accused products meet each limitation of each asserted claim:

> To satisfy the summary judgment standard, a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant.

*Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (affirming summary judgment of noninfringement where patentee's expert did not sufficiently identify the claim limitation in the accused device); *IPVX Pat. Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv01708 HRL, 2014 WL 3074296, at *3 (N.D. Cal. July 3, 2014) (attorney argument in lieu of evidence "entirely insufficient to create a material issue of fact").

Freshub's expert Dr. Medvidović provides no such opinion as to Whole Foods. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

█████████████, but based on the evidence of record, he *cannot* prove infringement.  The only

Whole Foods technology that could be relevant Freshub's claims is the Whole Foods Market

mobile app. ████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

███   ████████████████████████████████████████

█████████████████████████████████████████

## IV.      CONCLUSION

For the reasons stated, Amazon and Whole Foods respectfully request that the Court grant

its motion for summary judgment of no direct infringement of the asserted patents.



Dated:  March 26, 2021

Respectfully submitted,

/s/ Ravi R. Ranganath

J. David Hadden, (CSB No. 176148)
Email:  dhadden@fenwick.com
Saina S. Shamilov, (CSB No. 215636)
Email:  sshamilov@fenwick.com
Todd R. Gregorian (CSB No. 236096)
Email:  tgregorian@fenwick.com
Ravi R. Ranganath (CSB No. 272981)
Email:  rranganath@fenwick.com
Allen Wang (CSB No. 278953)
Email:  allen.wang@fenwick.com
Eric B. Young (CSB No. 318754)
Email:  eyoung@fenwick.com
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

*Of Counsel:*

Barry K. Shelton (TX Bar #24055029)
bshelton@sheltoncoburn.com
Bradley Dalton Coburn
coburn@sheltoncoburn.com
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Tel: (512) 263-2165
Fax: (512) 263-2166

*Counsel for Defendants*
*AMAZON.COM, INC., AMAZON.COM*
*SERVICES LLC, PRIME NOW, LLC, and*
*WHOLE FOODS MARKET SERVICES, INC.*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing document was filed under the Court's CM/ECF system, automatically effecting service on counsel of record for all other parties who have appeared in this action on the date of such service.

*/s/ Ravi R. Ranganath*
Ravi R. Ranganath
