# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD., | |
| Plaintiffs, | |
| v. | Case No. 1:19-CV-00885-ADA |
| AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation, | **PUBLIC VERSION** |
| Defendants. | |

# OPPOSITION TO FRESHUB'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY

# TABLE OF CONTENTS

I.     INTRODUCTION ----------------------------------------------------------------------- 1

II.    ARGUMENT------------------------------------------------------------------------------ 2

    A.    The Court should reject Freshub's request to impose a new IPR estoppel because it would violate the plain language of the IPR statute---------------------- 2

    B.    Disputed facts preclude summary judgment of validity over the ▮▮▮▮ system and related projects ----------------------------------------------------------- 6

    C.    Defendants have met their burden to prove invalidity under § 112 and § 101 ----------------------------------------------------------------------------------- 10

        1.    Defendants provided ample evidence that the claimed inventions are not enabled------------------------------------------------------------------ 10

        2.    Defendants have provided ample evidence that the asserted patents lack sufficient written description------------------------------------------- 13

        3.    The asserted patents are ineligible on their face ---------------------------- 15

III.   CONCLUSION -------------------------------------------------------------------------- 19

# TABLE OF AUTHORITIES

*Cases:*                                                                    *Page(s):*

*Adenta GmbH v. OrthoArm, Inc.*,
    501 F.3d 1364 (Fed. Cir. 2007) --------------------------------------------------------- 9

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    967 F.3d 1285 (Fed. Cir. 2020) ------------------------------------------------------------ 18

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (en banc) ------------------------------------------------ 14

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015) ------------------------------------------------------------ 19

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ------------------------------------------------------------ 16

*CEATS, Inc. v. Cont'l Airlines, Inc.*,
    526 F. App'x 966 (Fed. Cir. 2013) --------------------------------------------------------- 9

*Cephalon, Inc. v. Watson Pharm., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013) ------------------------------------------------------------ 13

*CliniComp Int'l, Inc. v. Athenahealth, Inc.*,
    No. A-18-cv-00425-LY, 2020 WL 7011768 (W.D. Tex. Oct. 28, 2020) -------------------- 6

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
    986 F.3d 1367 (Fed. Cir. 2021) ------------------------------------------------------------ 18

*Douglas Dynamics, LLC v. Meyer Products LLC*
    886, 2017 WL 1382556 (W.D. Wisc. Apr. 18, 2017) ------------------------------------- 6

*Finjan, Inc. v. Cisco Sys., Inc.*,
    No. 17-cv-00072-BLF, 2020 WL 532991 (N.D. Cal. Feb. 3, 2020) --------------------- 2–5

*Hilgraeve Inc. v. Symantec Corp.*,
    271 F. Supp. 2d 964 (E.D. Mich. 2003) --------------------------------------------------- 9

*Innovation Scis., LLC v. Amazon.com, Inc.*,
    No. 18-cv-474, 2020 WL 4201884 (E.D. Tex. July 22, 2020) ------------------------------ 9

*IP Innovation L.L.C. v. Red Hat, Inc.*,
    No. 2:07-cv-447-RRR, 2010 WL 9501469 (E.D. Tex. Oct. 13, 2010) --------------------- 9

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*
    381 F.3D 1142 (Fed. Cir. 2004) ------------------------------------------------------------ 11

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) --------------------------------------------------- 15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ------------------------------------------------------------------- 19

*Norian Corp. v. Stryker Corp.*,
    363 F.3d 1321 (Fed. Cir. 2004) ---------------------------------------------------- 9

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
    396 F. Supp. 3d 851 (N.D. Cal. 2019)--------------------------------------------- 3

*Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd*
    No. 13-cv-645 2016 WL 6839394 (M.D.N.C Nov. 21, 2016) ------------------------------ 6

*Procter & Gamble Co. v. Team Techs. Inc.*
    No. 12-cv-552 2014 WL 12656554 (S.D. Ohio July 3, 2014) ------------------------------ 4-5

*Quake v. Lo*,
    928 F.3d 1365 (Fed. Cir. 2019) ---------------------------------------------------- 15

*Sciele Pharma Inc. v. Lupin Ltd.*
    684 F.3d 1253 (Fed. Cir. 2012) ---------------------------------------------------- 5

*Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*,
    817 F.3d 1293 (Fed. Cir. 2016) ---------------------------------------------------- 3

*Shire LLC v. Amneal Pharm., LLC*
    F.3d 1301 (Fed. Cir. 2015)---------------------------------------------------------- 18

*TQ Delta, LLC v. 2Wire, Inc*
    373 F. Supp. 3d 509 (Del. 2019) -------------------------------------------------- 11

*White Consol. Indus. v. Vega Servo-Control*,
    713 F.2d 788 (Fed. Cir. 1983) ----------------------------------------------------- 13

**STATUTES**

35 U.S.C. § 101 -------------------------------------------------------------------------*passim*

35 U.S.C.§ 112------------------------------------------------------------------ 2, 10, 18

35 U.S.C. § 315(e)------------------------------------------------------------- 1, 3, 4, 6

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*Other Authorities:*

America Invents Act --------------------------------------------------------------------------------- 3, 6

## I.     __INTRODUCTION__

Freshub cannot establish that it is entitled to summary judgment of no invalidity.

First, Freshub seeks summary judgment of no obviousness and anticipation because the Patent Trial and Appeal Board ("PTAB") declined to institute review of the asserted patents based on certain prior art references that Defendants assert in this case too.  In doing so, Freshub seeks to create a new form of estoppel that directly conflicts with the will of Congress, which limited IPR estoppel only to cases where the PTAB instituted *inter partes* review.  35 U.S.C. § 315(e).  But even if the Court accepted Freshub's invitation to create a new form of estoppel out of whole cloth, Freshub *still* would not be entitled to summary judgment because it is undisputed that Defendants assert prior art systems that could not have been asserted in IPR proceedings.

Second, Freshub seeks summary judgment of no anticipation and obviousness as to the ███████████████████████ because it contends that no such system existed.  But in the same breath Freshub admits, as it must, that issue is at a minimum "hotly contested" (Mot. at 12), and Defendants have put forth ample evidence supporting the existence of the system as described by their expert Dr. Johnson.  Freshub simply asks this court to ignore a material dispute as to the public availability of the ██████████  And even if no such *single* system existed (again, a matter in dispute), Freshub cannot preclude obviousness arguments based on the individual projects that Dr. Johnson fully describes in his report.  Thus, granting summary judgment on this basis would be error.

Third, Freshub seeks summary judgment of no invalidity for lack of enablement, written description, and patent ineligibility.  Freshub's implausible claim of a purported failure of proof by Defendants hinges on ignoring the 450-page report of Defendants' technical expert Dr. Johnson, who thoroughly addresses invalidity of each asserted claim.  As that report makes clear, the asserted patents claim the idea of voice shopping, but neither the claims nor the two-column

disclosure corresponding to the claimed voice processing system describes any specific technological solution for achieving the claimed result. Freshub is correct that there is no genuine issue of material fact that would preclude summary judgment but that judgment is of invalidity: Freshub's claims are invalid under § 112 for lack of written description and enablement and under § 101 for claiming ineligible subject matter. (*See* Dkt. 111 (Defendants' Motion for Summary Judgment of Invalidity).)

## II.   ARGUMENT

### A.   The Court should reject Freshub's request to impose a new IPR estoppel because it would violate the plain language of the IPR statute.

Freshub argues that Defendants cannot establish invalidity by obviousness or anticipation because the PTAB declined to institute review of the asserted patents in response to Defendants' IPR petitions. (Mot. at 5.) Specifically, Freshub argues that Defendants cannot prevail at trial on invalidity because the PTAB declined to institute review of Defendants' IPR petitions "under the lower evidentiary standards for institution of IPR;" and because the other prior art Defendants assert is either "cumulative of" or "weaker" than the art asserted in the IPRs. (*Id.* at 5, 7.) In effect, Freshub argues that Defendants should be precluded from asserting invalidity based on prior art because they filed unsuccessful IPRs. But Freshub does not cite *any* case in which a court granted summary judgment on this basis, because no such authority exists. And the only court to squarely consider such a motion summarily denied it in an order that Freshub neither cites nor attempts to distinguish. *Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-cv-00072-BLF, 2020 WL 532991 (N.D. Cal. Feb. 3, 2020).

In *Finjan*, the plaintiff—represented by the same litigation counsel who represents Freshub here—sought summary judgment of no invalidity, arguing "no reasonable jury could find that Cisco's asserted prior art could invalidate [the asserted] patents because Cisco 'unsuccessfully

asserted its strongest prior art' in IPRs and the PTAB declined to institute a review of the asserted

claims." No. 17-cv-00072-BLF, 2020 WL 532991, at *2 (N.D. Cal. Feb. 3, 2020). Judge Freeman

initially noted that 35 U.S.C. § 315(e)(2) governs IPR estoppel, and "[b]y the statute's plain terms,

for an IPR petition to create estoppel effect, the IPR *must result in a final written decision*." *Id.* at

*3 (emphasis added); 35 U.S.C. § 315(e)(2) (providing for estoppel following "an inter partes

review . . . that results in a final written decision"); *see also Shaw Indus. Grp., Inc. v. Automated

Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016) ("Both parts of § 315(e) create estoppel for

arguments 'on any ground that the petitioner raised or reasonably could have raised during that

inter partes review.' . . . [T]he PTO denied the petition as to that ground, thus no IPR was instituted

on that ground. The IPR does not begin until it is instituted."); *Power Integrations, Inc. v. ON

Semiconductor Corp.*, 396 F. Supp. 3d 851, 880 (N.D. Cal. 2019) ("Because there are no final

written decisions in the IPRs, an essential element for IPR estoppel is absent here."). Having

identified no *statutory* estoppel resulting from a decision not to institute review, the court declined

to create a new estoppel that Congress did not specify in the America Invents Act:

> The practical implication of [] Finjan's request is this: if a party files a petition for
> IPR before the PTAB (applying a lower burden of proof), it is presumed that the
> 'best' and 'strongest' prior art was used – and if the IPR is not instituted, that party
> cannot bring forth any invalidity challenges to the petitioned patent at the district
> court (applying a higher standard of proof) because a reasonable jury could not find
> invalidity. This outcome is nothing short of creating an IPR estoppel where the
> petition did *not* result in a final written decision – contrary to the statute's clear
> language. The Court declines Finjan's invitation to go down that road.

*Finjan, Inc.*, 2020 WL 532991, at *3 (emphasis in original). Though Finjan characterized the

invalidity grounds raised in Cisco's invalidity report as "second-string" and "weak," it did not

"address[] the substance of Cisco's invalidity theories" and therefore could not establish that "no

reasonable jury can find invalidity." *Id.* at *4.

The facts of this case are no different, and the outcome should be the same.  Here, like the defendant in *Finjan*, Defendants filed petitions for *inter partes* review, and the PTAB declined to institute review.[1]  (Declaration of Ravi R. Ranganath ("Ranganath Decl."), Exs. 1-4 (Institution Decisions)); *Finjan*, 2020 WL 532991, at *2.  Thus, no statutory estoppel attached as a result of the non-instituted IPRs.  35 U.S.C. § 315(e).  Just as in *Finjan*, some of the prior art references Defendants assert here were raised in the non-instituted IPRs.  (*See, e.g.*, Mot. at 4); *Finjan*, 2020 WL 532991, at *3-4.  And here, just like the plaintiff in *Finjan*, Freshub seeks summary judgment of no invalidity both on the grounds raised in the non-instituted IPRs and on prior art Freshub contends is "second-string" or "weak," without providing any substantive analysis of those invalidity grounds.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████  *Finjan*, 2020 WL 532991, at *3-4.  The Court should follow the reasoning of the *Finjan* court and deny Freshub's motion.  None of the cases Freshub cites changes this conclusion.

In *Procter & Gamble Co. v. Team Technologies Inc.*, a court in the Southern District of Ohio granted summary judgment of no invalidity.  No. 12-cv-552, 2014 WL 12656554, at *38 (S.D. Ohio July 3, 2014).  The court substantively analyzed the defendant's inherency arguments and concluded that the defendant's expert did not "provide any explanation" of how a prior art reference inherently disclosed the relevant limitation.  *Id.* at *9.  After reaching this conclusion, the court noted that the PTAB decision supported the court's determination because it rejected the

---

[1] The PTAB declined to institute one of Defendants' IPR petitions, Case No. IPR2020-01145 challenging the '153 patent, on non-substantive efficiency grounds in light of *Apple Inc. v. Fintiv, Inc.*, IPR2020-0019, Paper 15 (P.T.A.B. May 13, 2020).  (Ranganath Decl., Ex. 2.)  Thus, the PTAB's decision in that case could not reflect any weakness in Defendants' invalidity arguments.

"same unsupported conclusory [inherency] argument" under the lower "reasonable likelihood standard." *Id.* at \*10-11.  The *Procter & Gamble* court did not, as Freshub suggests, hold that the defendant could not succeed on its invalidity defense because it had filed an unsuccessful IPR. Here, Freshub does not make any *substantive* arguments regarding Defendants' invalidity theories based on the Calderon, Partovi, and Kuhn references, much less any arguments based on the ███████████████ prior art systems that were not, and could not have been, raised in the IPR petitions.  It has clearly not demonstrated the absence of a genuine dispute of material fact.  *See Finjan*, 2020 WL 532991, at \*4 (by failing to "address[] the substance of [the defendant's] invalidity theories" plaintiff did not establish that "no reasonable jury can find invalidity").

In *Sciele Pharma Inc. v. Lupin Ltd.*, the Federal Circuit actually *reversed* a district court's grant of a preliminary injunction in favor of a patentee because the district court improperly relied on the PTO's conclusions with respect to asserted prior art rather than performing an individual analysis.  684 F.3d 1253, 1258 (Fed. Cir. 2012).  In doing so, the panel explicitly noted that "there is no heightened or added burden that applies to invalidity defenses that are based upon references that were before the Patent Office," and that arguments regarding the weight of such evidence should go to the "fact finder."  *Id.* at 1260-61.

But even if filing unsuccessful IPR petitions could result in some form of estoppel, summary judgment would *still* be improper because Defendants assert *system* prior art that could not have been raised in their IPRs, including the ██████████████ prior art systems.  (Dkt. 111-15 (Johnson Rep.) at pp. 99-328.)  For these systems, Amazon's expert Dr. Johnson explicitly relies on evidence that could not have been raised in IPRs—*i.e.*, evidence *other* than printed publications.  ████████████████████████████████████████████████ ███████████  No estoppel could prevent Defendants from presenting their defenses based on

these prior art systems to the jury.  *See CliniComp Int'l, Inc. v. Athenahealth, Inc.*, No. A-18-cv-00425-LY, 2020 WL 7011768, at *2 (W.D. Tex. Oct. 28, 2020) (declining to preclude defendant from asserting system art for which defendant relied on non-public documents and information other than printed publications).

Finally, the Court should reject Freshub's "waiver" argument, which is nothing more than a weaker repackaging of its estoppel argument and is similarly contrary to the specific estoppel provision of the America Invents Act.  As Freshub acknowledges, Fifth Circuit law on waiver requires that a party *intend* to relinquish a right.  (Mot. at 8 (quoting *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015).)  By pursuing IPRs, Defendants manifestly did not intend to waive any rights, much less rights to assert system art that could not be raised before the PTAB.  Moreover, Freshub cites no cases applying this general waiver in the context of IPRs. And in one of the cases Freshub does cite, *Douglas Dynamics, LLC v. Meyer Products LLC*, a court in the Western District of Wisconsin expressly declined to "apply § 315(e)(2) estoppel to non-instituted grounds" and noted that IPR decisions "will have no effect on validity challenges based on other types of prior art" that could not be raised in IPRs, such as system art.[2]  No. 14-cv-886, 2017 WL 1382556, at *1 n.1, *5 (W.D. Wisc. Apr. 18, 2017).  The Court should deny Freshub's motion for summary judgment of no obviousness and anticipation.

**B.    Disputed facts preclude summary judgment of validity over the ▮▮▮▮ system and related projects.**

Freshub next seeks summary judgment of no invalidity over the ▮▮▮▮▮▮ ▮▮▮ because it contends that the system did not exist as of the priority date of the patents.

---

[2] In the other case Freshub cites, *Precision Fabrics Group, Inc. v. Tietex Int'l, Ltd.*, a North Carolina court considered denials of IPRs as evidence of the "weakness" of the defendant's invalidity claim, but noted that the "estoppel provisions of 35 U.S.C. § 315(e)(2) do not apply to a denial of an inter partes review."  No. 13-cv-645, 2016 WL 6839394, at *9 (M.D.N.C. Nov. 21, 2016).

(Mot. at 11.)  Freshub's motion on this ground must be denied because Freshub cannot establish the absence of a genuine dispute of material fact relating to the existence of the ███ system as described by Dr. Johnson.

Defendants assert invalidity based on the ████████████████████████ ███████████████████████████████████████████████████████ ███ As Amazon's expert Dr. Johnson explains, the ██████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████   ███████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████

Two particular *implementations* of the ██████████ are relevant to Freshub's motion: ███ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████   Both ████████████████████ are predecessors to ██████████████████████████████ in 2003 and acquired ██████ and took on its name in September 2005—*before* the December 2005 effective filing date of the asserted patents.  (*See, e.g.*, Dkts. 107-22, 107-23, Ranganath Decl., Ex. 6 (Pepper Dep. Tr.) at 8:23-9:6.)  ███████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████ Based on the substantial documentation produced by █████ and,

among other things, ██████████ sworn testimony, Amazon's expert Dr. Johnson explained that

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████

Freshub's contends that:  (1) the █████████ as defined by Dr. Johnson to include the

████████████ projects, could not have existed until █████████████████████ in

September 2005; (2) there is no evidence that such a system was in public use prior to the priority

date of the asserted patents; and (3) the combined system as described by Dr. Johnson never

actually existed.  (Mot. at 12-13.)  These contentions lack merit:  Dr. Johnson cites evidence

establishing that the ██████████ was implemented in the ███████████ projects, which were

developed and used between 1999 and 2004, and that the same team, led by ██████████████

█████████████████ worked on each.  Freshub's arguments elevate form over substance,

focusing on branding rather than the common technology and shared history of these systems,

which were developed by common teams at ████████ and its predecessor companies, and all fall

under the umbrella of the ████████ product suite.  Moreover, contrary to Freshub's suggestion, Dr.

Johnson did not testify that the projects were unrelated.  (Mot. at 13.)  He merely clarified that his

understanding as to the connection between the ██████████ and the █████████████ projects

was based on, among other things, his review of the ███████ testimony and his general knowledge as one of ordinary skill in the art, rather than any independent knowledge as a fact witness concerning the development of the relevant systems and projects. ██████████████████ ███████████████████████████████████████████████████ ██████████████████████████

Regardless, Freshub's motion only highlights that the parties dispute facts central to Defendants' invalidity theory based on the ███████████ These disputed facts must be resolved at trial by the *jury* and preclude entry of summary judgment. Indeed, Federal Circuit law is clear that whether a prior art system existed and was available to the public as of a certain date is a quintessential question of fact that must be resolved by the jury on a full factual record.[3] *See, e.g.*, *CEATS, Inc. v. Cont'l Airlines, Inc.*, 526 F. App'x 966, 970-71 (Fed. Cir. 2013) (affirming jury verdict of invalidity over prior art system, finding substantial evidence supported finding that prior art system "as publicly released" practiced claimed "mouse over" feature); *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1370-73 (Fed. Cir. 2007) (affirming denial of JMOL, where jury found patent invalid based on public use of system before critical date); *IP Innovation L.L.C. v. Red Hat, Inc.*, No. 2:07-cv-447-RRR, 2010 WL 9501469, at *4 (E.D. Tex. Oct. 13, 2010) (affirming jury verdict of invalidity over prior art system where expert "recreate[d]" system using collection of documents); *Innovation Scis., LLC v. Amazon.com, Inc.*, No. 18-cv-474, 2020 WL 4201884, at *2 (E.D. Tex. July 22, 2020) ("whether or not the HAL system Dr. Johnson tested predates the asserted patents is a factual question to be decided by the jury").

---

[3] The cases cited by Freshub do not discuss whether disclosures adequately prove the existence of a prior art system, nor do they suggest that a court can or should make such a determination when the parties dispute facts underlying the legal question of public availability. *See Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1330 (Fed. Cir. 2004); *Hilgraeve Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964, 973-77 (E.D. Mich. 2003).

But even if the Court determines that Defendants cannot establish that the combined system described by Dr. Johnson existed and was publicly available as of the critical date, summary judgment would *still* be improper because Defendants can establish invalidity through obviousness. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Freshub makes no argument otherwise:  it does not address the systems individually or make any argument regarding obviousness combinations using them.  Thus, summary judgment of no invalidity over the █████

████████████████████████ projects would nevertheless be improper.

### C.     Defendants have met their burden to prove invalidity under § 112 and § 101.

The Court can and should resolve Defendants' invalidity challenges under § 112 and § 101 at summary judgment because there is no genuine dispute that the asserted patents fail the enablement and written description requirements and do not claim patent-eligible subject matter. (Dkt. 111 (Defendants' Motion for Summary Judgment of Invalidity) at 16-22.)  Freshub agrees there are no fact disputes material to the § 112 and § 101 issues:  it also seeks summary judgment on all three grounds, in each case based on purported failures of proof by Defendants.  But Freshub's arguments each fail and its motion should be denied.

#### 1.     Defendants provided ample evidence that the claimed inventions are not enabled.

Freshub contends that Defendants cannot succeed on their enablement defense because Defendants' invalidity expert Dr. Johnson, purportedly, █████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████  Both contentions lack merit.

First, contrary to Freshub's assertion, Dr. Johnson *extensively* analyzed the information that would be known to a skilled artisan as of the date of the patents.  (*See, e.g.*, Johnson Rep. at ¶¶ 117-245 (discussing the state of the art in the field of voice processing systems).)  Dr. Johnson also describes in detail the asserted patents' shared specification and its limited disclosures relating to voice processing, specifically in the context of the state of the art as of the date of the patents. (*Id.* at ¶¶ 71-75.)   For example, Dr. Johnson analyzes the phrases ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████[4]

(*Id.* at ¶ 74.)  Elsewhere in his report, Dr. Johnson opines that one of ordinary skill would not understand the voice processing steps recited in the asserted claims to refer to specific methods known in the art at the time of the patents.  (*Id.* at ¶¶ 81, 87, 97, 106.)  Based, among other things, on this analysis and his detailed description of the state of the art at the time of the patents, Dr. Johnson concludes that the asserted patents lack an enabling disclosure.  (*Id.* at ¶¶ 1365-72.)  Thus, Freshub is wrong that Defendants have not met their burden as to this purported requirement.[5]

---

[4] ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████

[5] The case on which Freshub primarily relies, *TQ Delta, LLC v. 2Wire, Inc.*, is inapplicable. 373 F. Supp. 3d 509, 525 (Del. 2019).  There, a court in Delaware granted summary judgment of no invalidity based on enablement because the defendant's expert "focuse[d] wholly on what the specification discloses and ignores that information 'already known to and available to one of ordinary skill in the art' need not be included in the specification for the patent to be enabled."  *Id.* Here, Dr. Johnson explicitly considered the information available to skilled artisans as of the date of the patents, such as whether such a person would understand the "grammar constrained recognition" and "natural language recognition" to refer to existing algorithms known in the art. (Johnson Rep. at ¶¶ 75-76.)  The other case Freshub cites, *Koito Manufacturing Co. v. Turn-Key-*

Second, contrary to Freshub's assertion, Dr. Johnson offers a detailed opinion regarding experimentation that would be necessary to make and use the full scope of the claimed inventions. (Johnson Rep. at ¶¶ 1365-71.)  As Dr. Johnson explains with reference to his earlier summary of the specification (*see id.* at ¶¶ 71-73), because the patents provide ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

He opines that a skilled artisan would have to █████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████   Indeed, Freshub's own expert testified that as of the date of the patents, reliable voice recognition and interpretation was a complicated problem for which the patents provide no solution.  (*See, e.g.*, Ranganath Decl., Ex.

7 ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████   As further support for his opinion, Dr. Johnson notes that Ikan—the original assignee, who presumably had in its possession all the information described in the

<hr>

*Tech, LLC*, stands for the unremarkable proposition that the specification need not describe what was already known and available to one of ordinary skill in the art.  381 F.3d 1142, 1155 (Fed. Cir. 2004).  It does not discuss the "analysis" that experts must perform of the information known to one of ordinary skill in the art.  *Id.*

patents' specification—could not develop any technology to reliably translate a user utterance to text, even *after* it licensed existing voice software.  (*See, e.g.*, Johnson Rep. at ¶¶ 1367, 1387.)

Freshub criticizes Dr. Johnson's reliance on Ikan's failure to develop voice technology because ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████  But the Federal Circuit has stated that such evidence—by nature, outside the four corners of the patent—is highly relevant to the undue experimentation inquiry.  *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1339 (Fed. Cir. 2013) ("we have held that the amount of experimentation would be undue where: (1) the specification lacks guidance by teaching away from the subject matter that was eventually claimed; and (2) there is evidence of *the patentee's own failures to make and use the later claimed invention at the time of the application*") (emphasis added).  And even if true that Ikan's failed efforts to develop voice technology occurred "years after" the patents were filed (Mot. at 16), this evidence shows that Ikan had not developed the claimed voice system as of the earlier filing date of the patents and would have required years of experimentation to develop an admittedly unreliable voice processing system.  That is sufficient to establish lack of enablement.  *See, e.g.*, *White Consol. Indus. v. Vega Servo-Control*, 713 F.2d 788, 791 (Fed. Cir. 1983) (required experimentation of two man years would be "clearly unreasonable").

The Court should therefore deny Freshub's motion for summary judgment of no invalidity, and grant Defendants' motion for summary judgment of invalidity for lack of enablement.

## 2.    Defendants have provided ample evidence that the asserted patents lack sufficient written description.

Freshub next argues that Defendants have not established invalidity for lack of written description because Dr. Johnson purportedly limits his discussion of written description to ████



███████████████████████████████████████████████████████ Freshub is wrong again.

Though the section of Dr. Johnson's report under the heading ████████████████

████████████████████████████ spans two pages, Dr. Johnson's analysis throughout his

nearly *450-page report* supports his opinion regarding written description.  (*See* Johnson Rep.)

For example, as noted above, Dr. Johnson discusses the patents' shared specification in detail, and

explains how it does not describe the "translating," "matching," and "identifying" steps claimed

by the patents.  (*Id.* at ¶¶ 71-75.) ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████ Dr. Johnson then performs

the same analysis for each of the asserted patents individually, and reaches the same conclusion.

(*See id.* at ¶¶ 81, 87, 97, 106.)  After this extensive review of the intrinsic evidence, Dr. Johnson

concludes that the asserted patents do not convey to one of ordinary skill in the art that the inventors

had possession of the claimed subject matter as of the filing date.[6]  (*See id.* at ¶¶ 1373-78); *Ariad*

*Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  Again, Freshub's

expert Dr. Polish agrees. ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████

Freshub criticizes Dr. Johnson's reliance on Ikan and Freshub's failure to develop

functional voice technology and contends that ██████████████████████████████

---

[6] In his analysis of written description, Dr. Johnson references other sections of his report, namely Sections VIII and IX.C.

██████████████████████████████████████████████████████

███████████████████     But as the Federal Circuit has made clear, "'the purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not,' and the requirement is particularly important when, as here, claims are added later during prosecution in response to development by others." *Quake v. Lo*, 928 F.3d 1365, 1373 (Fed. Cir. 2019) (quoting *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1383 (Fed. Cir. 2009)). The fact that Ikan prosecuted the asserted claims more than a decade after filing the parent application—and after Amazon launched Alexa and its voice shopping features—and tried and failed to develop a working voice system years before confirms that the inventors could not have had possession of the claimed voice system as of the earlier effective filing date of the patents.[7] *See id.*; (Johnson Rep. at ¶¶ 1379-1400). The Court should deny Freshub's motion for summary of judgment of no invalidity for lack of written description.

### 3.    The asserted patents are ineligible on their face.

As set forth in Defendants' motion for summary judgment, the asserted patents are directed to the impermissibly abstract idea of voice shopping and recite no inventive concept to save them from ineligibility under § 101. (Dkt. 111 at 6-15.)

Freshub nevertheless seeks summary judgment of *no* invalidity under § 101, primarily arguing that Defendants have not provided sufficient "evidence" to meet their burden to prove invalidity. (*See, e.g.*, Mot. at 18-19.) But patent eligibility is an issue of law, for which the only

---

[7] Freshub distinguishes evidence relevant to the written description requirement from evidence relevant to enablement. ████████████████████████████████████ ████████████████████████████████████████████  But the Federal Circuit makes no such distinction. Indeed, the written description and enablement "requirements usually rise and fall together. That is, a recitation of how to make and use the invention across the full breadth of the claim is ordinarily sufficient to demonstrate that the inventor possesses the full scope of the invention, and vice versa." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

"evidence" required is typically the patents themselves.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).  While "[t]he patent eligibility inquiry *may* contain underlying issues of fact," those are limited to the narrow "question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field."  *Id.* at 1365, 1368 (emphasis added).  Defendants have more than met their burden by submitting the sworn testimony of Dr. Johnson.  (*See* Johnson Rep. at ¶¶ 1341-64.) ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████  Defendants have met their burden to establish that the asserted claims are patent ineligible and invalid under § 101.

None of Freshub's arguments changes this.  First, it argues that Defendants have provided no evidence "refuting" that the asserted patents are eligible because they claim ███████████

████████████████████████████████████████████████

████████████████████████████  This argument lacks merit because the asserted patents themselves lack any such description.  (Dkt. 111-3 (Johnson Reb. Rep.) at ¶ 445

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████  Moreover, *two* of Freshub's experts testified that using such a distributed architecture for resource-intensive processing was strictly conventional and not an inventive contribution of the asserted patents.

(Ranganath Decl., Ex. 8 ████████████████████████████████████

███████████████████████████████████████████████████████████████

██████ *Id.*, Ex. 9 ██████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

Thus, the evidence Freshub cites of the purportedly inventive "distributed architecture" has been

thoroughly rebutted not only by Dr. Johnson, but Freshub's own experts.

Second, Freshub contends that Defendants' expert Dr. Johnson performs a "cursory"

analysis and fails to address each claim individually.  (Mot. at 19-20.)  This contention lacks merit.

The section of Dr. Johnson's report dedicated to patent ineligibility spans 10 pages.  (Johnson Rep.

at pp. 424-34.)  In it, Dr. Johnson identifies the common limitations in each of the asserted claims

and addresses them individually and as an ordered combination.  (*Id.* at ¶¶ 1342, 1344 (identifying

and analyzing the claimed functional steps present in each independent claim), 1355-58 (analyzing

both an exemplary independent claim and describing unique additions of remaining asserted

independent claims), ¶¶ 1359-1362 (describing each of the dependent claims and explaining why

they are non-inventive).)  ██████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████  Dr. Johnson's

thorough report conclusively establishes that the asserted claims are ineligible.

Third, Freshub argues that Dr. Johnson ignores the Court's claim constructions in

concluding that the claims assert functional limitations.  (Mot. at 20.)  Freshub is wrong again.

While the Court declined to construe various claim limitations under § 112, ¶ 6, the Court did *not* conclude that the claims themselves do not "possess functional elements." (*See* Mot. at 20.) Indeed, the Court's claim construction order simply stated that the translating, identifying, and matching terms are "Not subject to § 112, ¶ 6" (Dkt. 63); the Court did not analyze whether the patents provided any specific solution for these limitations or address patent eligibility at all. Indeed, the Federal Circuit has held that § 101 and § 112 are separate requirements, and "neither requirement replaces the other." *See, e.g., Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020). To be patent eligible under § 101, "the claim itself . . . must go beyond stating a functional result; it must identify 'how' that functional result is achieved." *Id.* As Dr. Johnson makes clear, Freshub's claims do not meet this requirement.

Fourth, Freshub claims that Dr. Johnson does not address ██████████████████ ██████████████████████████████ But Freshub points to no authority that requires a party challenging eligibility to address an examiner's analysis under *Alice*. The case it cites, *Shire LLC v. Amneal Pharmaceuticals, LLC*, discusses a heightened burden when asserting invalidity based on *prior art* listed on the face of the patent and specifically considered by an examiner. 802 F.3d 1301, 1307 (Fed. Cir. 2015). The Court owes no deference to a patent examiner's assessment of the *legal* issue of patent eligibility.[8] *See, e.g., cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1375 n.1 (Fed. Cir. 2021) (reversing-in-part PTAB determination of patent eligibility, noting patent office guidelines for patent eligibility "do[] not carry the force of law, and [are] not binding on our patent eligibility analysis").

---

[8] For the same reason, the opinions of Freshub's patent procedure expert Mr. Stoll regarding the examiner's assessment of patent eligibility are irrelevant and subject to exclusion. ██████ ████████████████████████████████

Finally, Freshub argues that Defendants cannot succeed on their eligibility challenge because, purportedly, they do not provide any evidence demonstrating that the claims are unduly preemptive.  (Mot. at 22.)  This is also incorrect:  Dr. Johnson explains in his report that the because the asserted claims are not limited to any particular application or specific devices, they seek to cover *all* ways of processing speech to identify a requested item. (Johnson Rep. at ¶ 1364.)  The claims are therefore unduly preemptive and ineligible.[9]  *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 88 (2012).

The Court need only review the intrinsic record to conclude that the asserted claims are impermissibly abstract, ineligible, and invalid under § 101.  But if the Court deems any other evidence necessary, Defendants have more than met their burden to establish § 101 invalidity through the comprehensive report of Dr. Johnson.  The Court should deny Freshub's motion for summary judgment of no invalidity.

## III.   <u>CONCLUSION</u>

The Court should deny Freshub's motion for summary judgment of no invalidity in its entirety.

---

[9] In any event, if the Court finds the claims ineligible under the *Alice* framework, it need not engage in any separate preemption analysis.  *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

Dated:  April 9, 2021

*Of Counsel:*

Barry K. Shelton (TX Bar #24055029)
bshelton@sheltoncoburn.com
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Tel: (512) 263-2165
Fax: (512) 263-2166

Deron R. Dacus (TX Bar #00790553)
ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
Fax: (903) 581-2543

Respectfully submitted,


*/s/ Ravi R. Ranganath*
J. David Hadden, CSB No. 176148
dhadden@fenwick.com
Saina S. Shamilov, CSB No. 215636
sshamilov@fenwick.com
Todd R. Gregorian (*Admitted Pro Hac Vice*)
tgregorian@fenwick.com
Ravi R. Ranganath, CSB No. 272981
rranganath@fenwick.com
Vigen Salmastlian, CSB No. 276846
vsalmastlian@fenwick.com
Allen Wang, CSB No. 278953
allen.wang@fenwick.com
Eric B. Young, CSB No. 318754
eyoung@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

*Counsel for Defendants*
*AMAZON.COM, INC., AMAZON.COM*
*SERVICES LLC, PRIME NOW, LLC, and*
*WHOLE FOODS MARKET SERVICES, INC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Ravi R. Ranganath
Ravi R. Ranganath