**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| FRESHUB, INC., a Delaware Corporation, and FRESHUB, LTD., an Israeli Limited Liability Company, | |
| Plaintiffs, | Case No.: 1:19-CV-00885-ADA |
| | **PUBLIC VERSION** |
| vs. | |
| AMAZON.COM INC., a Delaware Corporation, AMAZON.COM SERVICES, LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation, | |
| Defendants. | |

**PLAINTIFFS FRESHUB, INC. AND FRESHUB, LTD.'S REPLY**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY**

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Facsimile: (254) 754-6331
palmer@namanhowell.com

*Attorneys for Plaintiffs,*
FRESHUB, INC. and FRESHUB, LTD.

Dated: April 16, 2021

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT .................................................................................................... 1

      A.   Waiver is Based on the Law and Legislative Intent of IPRs and Defendants
           Failed to Present Clear and Convincing Evidence of Invalidity.................................. 1

      B.   Defendants Have No Evidence of the SpeechWorks/Nuance System........................ 4

          1.   ██████████████████████████████████████
                    ████████████ .............................................................. 5

          2.   The SpeechWorks/Nuance System was Not Publicly Available...................... 7

      C.   Defendants Cannot Prove Invalidity under 35 U.S.C. §112 and §101. ...................... 8

          1.   The Specification Teaches One of Skill in the Art How to Make and Use
               the Claimed Invention........................................................................................ 9

          2.   The Specification Conveys that the Inventors Had Possession of the
               Invention. .......................................................................................................... 12

          3.   Defendants Cannot Prove Each Asserted Claim of the Asserted Patents
               are Abstract. ...................................................................................................... 13

III.    CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*
    967 F.3d 1285 (Fed. Cir. 2020)................................................................................14

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)..............................................................................15

*Boren v. U.S. Nat. Bank Ass'n*,
    807 F.3d 99 (5th Cir. 2015) ......................................................................................2

*Cephalon, Inc. v. Watson Pharm., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013).........................................................................10, 11

*Clearlamp, LLC v. LKQ Corp.*,
    No. 12 C 2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) ..................................4

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
    986 F.3d 1367 (Fed. Cir. 2021)..............................................................................15

*Douglas Dynamic, LLC v. Meyer Prods. LLC*,
    No. 14-cv-886-JDP, 2017 WL 1382556 (W.D. Wis. Apr. 18, 2017).......................1

*Finjan, Inc. v. Cisco Sys. Inc.*,
    No. 17-cv-00072-BLF, 2020 WL 532991 (N.D. Cal. Feb. 3, 2020) ........................1

*Motorola, Inc. v. Interdigital Tech. Corp.*,
    121 F.3d 1461 (Fed. Cir. 2007)............................................................................5, 9

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
    No. 15 C 1067, 2019 WL 861394 (N.D. Ill. Feb. 22, 2019)....................................4

*Precision Fabrics Group, Inc. v. Tietex Int'l, Ltd.*,
    No. 1:13-cv-645, 2016 WL 6839394 (M.D.N.C. Nov. 21, 2016) ........................1, 4

*Proctor & Gamble Co. v. Team Techs., Inc.*,
    No. 1:12-CV-552, 2014 WL 12656554 (S.D. Ohio Jul. 3, 2014)............................3

*SAS Institute, Inc. v. Complementsoft, LLC*,
    825 F.3d 1341 (Fed. Cir. 2016).................................................................................2

*SAS Inst., Inc. v. Iancu*
    138 S. Ct. 1348 (2018)..............................................................................................2

*Sciele Pharma Inc. v. Lupin Ltd.*,
    684 F.3d 1253 (Fed. Cir. 2012)...................................................................................3

*Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*,
    339 F. Supp. 3d 803 (N.D. Ill. 2018) ........................................................................8

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
    432 F. Supp. 3d 448 (D. Del. 2020) ..........................................................................4

**Statutes**

35 U.S.C. § 101 .............................................................................................................8, 9

35 U.S.C. § 102(a-b) .........................................................................................................7

35 U.S.C. § 112 .............................................................................................................8, 9

## I.   INTRODUCTION

While Defendants had ample opportunity to provide sufficient evidence to support their invalidity defenses (as the Court did not place page limitations on summary judgment briefing, Dkt. No. 40 at 3), they largely left Freshub's Motion unopposed because no such evidence exists. Because Defendants do not have evidence, much less clear and convincing evidence, to support their invalidity claims, a grant of Freshub's Motion on validity is appropriate.

## II.   ARGUMENT

### A.   Waiver is Based on the Law and Legislative Intent of IPRs and Defendants Failed to Present Clear and Convincing Evidence of Invalidity

Freshub's waiver argument is grounded upon Fifth Circuit waiver law and aligns with the *inter partes* review ("IPR") framework.  Defendants' Opposition (hereinafter "Opp.") primarily focuses on estoppel, a different legal doctrine, and thus should be disregarded.[1]  *See* Opp. at 2-6. Defendants do not dispute that they had the existing right to have their anticipation and obviousness challenges be fully heard before the District Court and that they knew of that right; they only cursorily challenge the intent prong of waiver.  Opp. at 6.  Filing the IPR petitions proves Defendants' intent to relinquish their right of asserting anticipation and obviousness before the District Court based on alleged art that they asserted or could have asserted in their

---

[1] Defendants rely upon case law regarding estoppel.  *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2020 WL 532991 (N.D. Cal. Feb. 3, 2020), involved IPR estoppel.  That Court denied summary judgment because the invalidity theories before the District Court were different from anything that the PTAB had previously considered.  *Id.* at *4.  Here, Defendants do not dispute that the invalidity theories—applying the same or cumulative art— do not add any substantive arguments that the PTAB did not consider.  Defendants' attempt to distinguish *Douglas Dynamic, LLC v. Meyer Prods. LLC,* No. 14-cv-886-JDP, 2017 WL 1382556, at *4 (W.D. Wis. Apr. 18, 2017) and *Precision Fabrics Group, Inc. v. Tietex Int'l, Ltd.,* No. 1:13-cv-645, 2016 WL 6839394, at *9 (M.D.N.C. Nov. 21, 2016) based on estoppel grounds is also misplaced because Freshub cited *Douglas* to show that Defendants did not have to file IPRs, as they had the right to be fully heard on their anticipation and obviousness challenges before the District Court.  Motion at 10.

IPR petitions.  Indeed, Defendants' conduct is inconsistent with a right to present anticipation and obviousness based on patents and printed publications before the District Court based on the same art or art that could have been presented in the IPRs, demonstrating an intent to relinquish that right.  *See Boren v. U.S. Nat. Bank Ass'n*, 807 F.3d 99, 105-06 (5th Cir. 2015).  Defendants do not address this at all in their briefing.

Due to the potential of estoppel, Defendants had to present their best evidence against the Asserted Patents in their IPR petitions.  *See SAS Institute, Inc. v. Complementsoft, LLC*, 825 F.3d 1341, 1355-56 (Fed. Cir. 2016*), rev'd and remanded by SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018) (Judge Newman's dissent explaining that estoppel forces the challenger to present the best evidence against a patent upfront because when challengers decide to "front load their case[s]" before the PTAB, the decision "imposes estoppel to 'eliminate the need to press any claims in other fora.'") (citation omitted).  Given that the legislative purpose behind IPRs is to be a quick and effective alternative to District Court litigation (*see* Motion at 10-11), Defendants relinquished their rights before the District Court when they filed IPR petitions with their best invalidity evidence due to the risk of estoppel, and thereby waived their right to assert anticipation and obviousness if the IPR proceedings did not go their way.  Equity and fairness demand that waiver applies, as Defendants should not get a second bite at the apple when their first bite—predicated on their best evidence—failed.

Furthermore, Defendants do not squarely address the fact that they cannot meet the higher clear and convincing evidentiary burden before the District Court when they failed to meet the PTAB's lower evidentiary burden, particularly where Defendants' invalidity theories are the same or cumulative of their rejected positions taken before the PTAB.  *See* Motion at 5-8 (demonstrating that the substance of Defendants' alleged prior art and their cumulative nature do

not add any substantive arguments to Defendants' failed invalidity theories before the PTAB);
*see also Proctor & Gamble Co. v. Team Techs., Inc.*, No. 1:12-CV-552, 2014 WL 12656554, at
*10-11 (S.D. Ohio Jul. 3, 2014) (granting summary judgment of no invalidity in part because
where invalidity theories before the District Court did not add any arguments that the PTAB had
not previously considered and rejected under a lower evidentiary burden).  Instead, Defendants
focus on estoppel and law regarding estoppel, which is different from whether Defendants failed
to meet their clear and convincing burden of proof.  *See* Opp. at 3-4.[2]

      Here, it is undisputed that Defendants rely on the same art (Calderone, Partovi, and
Kuhn) that the PTAB rejected under a lower evidentiary standard, as well as cumulative art that
they could have asserted before the PTAB, namely the HeyAnita and the Nuance OMS printed
publications.  Defendants do not dispute that they could have presented the printed publications
that form the ***only*** basis for Defendants' assertion of Nuance OMS and nearly the entire basis for
the HeyAnita system before the PTAB.[3]  Defendants relied on those printed publications for their
invalidity contentions to chart Nuance OMS and HeyAnita against the Asserted Patents, proving
that they had access to the features of Nuance OMS and the HeyAnita systems that they could
have asserted before the PTAB.  *See, e.g.,* Dkt. Nos. 107-3 – 107-10; *see also, e.g.*, Motion at 2-
3.  "[W]here there is evidence that a petitioner has reasonable access to printed publications
corresponding to or describing a product [or system] that it could have proffered during the IPR
process," the petitioner cannot claim it could not have asserted the art before the PTAB by

---

[2] Defendants cite *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1258 (Fed. Cir. 2012), which
only confirms that Defendants have a clear and convincing burden of proof when the Patent
Office previously considered the same art, and has nothing to do with IPRs.  *See, e.g.*, *id.* at
1260.
[3] Defendants' expert, Dr. Johnson, relies on HeyAnita pseudo code only once, and it was in
combination with HeyAnita's printed publication ("Desai").  *See* Dkt. No. 111-15 at ¶ 691;
Declaration of Aakash Jariwala ("Jariwala Reply Decl.") filed herewith, Ex. 1 (Desai Dep. Tr.) at
150:22-151:6.

pointing to its product rather than the printed publications.  *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15 C 1067, 2019 WL 861394, at *10 (N.D. Ill. Feb. 22, 2019) (citation omitted); *see also Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454-55 (D. Del. 2020).  Indeed, where salient features of a system are described or shown in publications, Defendants cannot disguise their reliance on printed publications as a system to claim that the PTAB could not have considered it.  *See Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016) (concluding that it is "disingenuous" to cloak reliance on a printed publication as a product).

Defendants' invalidity theories before the District Court are not substantively different from what the PTAB rejected, and the PTAB's refusal to institute IPR on such art demonstrates that Defendants cannot meet the higher clear and convincing evidentiary burden here.  For example, in *Precision Fabrics*, 2016 WL 6839394, at *9, the court granted summary judgment of no invalidity where "PTAB's refusal to institute an inter partes review is indicative of the weakness of [defendant's] claim of invalidity. . . , as the PTAB will not authorize an inter partes review unless 'there is a reasonable likelihood' that a petitioner would prevail in proving invalidity."  *Id.* (citation omitted).  Because Defendants could not meet their lower evidentiary burden before the PTAB, they cannot meet their clear and convincing evidentiary burden here with the same or cumulative art, which is presumably weaker second string art.

B.    **Defendants Have No Evidence of the SpeechWorks/Nuance System.**

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████   (the "SpeechWorks/Nuance System") and such a system was publicly available and accessible in the U.S. prior to the priority date of the Asserted Patents.



**1.**

Defendants rely on attorney argument and their expert's unsupported statements to claim that the SpeechWorks/Nuance system, ████████████████████████████ ██████████████ was a single system. *See* Opp. at 6-10; *see also Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 2007) (conclusory expert testimony and unsupported statements insufficient for meeting the clear and convincing burden of proof).

*See* Opp. at 8.  For example, Defendants did not compare technical information to show some purported relationship to one another, analyze manuals to point out how the three programs allegedly worked together or were common technology, or identify any allegedly shared source code.

███████. *See e.g.*, Dkt. No. 109-3 (Johnson Open. Rpt.) at ¶¶ 274, 286 (no citation to an underlying document), 283-284 (████████████████████████████ (*see* Jariwala Reply Decl., Ex. 2)████████████ (*see id.*, Ex. 3), none of which mention Nuance OMS).[4] ██████████████████████████

███████████████████████████████████████████

███████████ Dkt. No. 106-3 (3/20/21 Johnson Dep. Tr.) at 107:13-108:13, 113:19-115:7. Thus, Defendants have no evidence, much less the requisite clear and convincing evidence, that this purported SpeechWorks/Nuance System ever existed.

Further, Defendants never identified a single person in connection with their unsupported statement that "████████████████████████████████" because no such person exists.  Opp. at 10.  Nuance never found anyone knowledgeable about Nuance OMS to testify about it.  Dkt. No. 136 at ¶ 11.  ████████████████████████

████████████████████████████.  Opp. at 7 (emphasis in original).

███████████████████████████████████████████

███████████████████████████████████████

███ Dkt. No. 109-3 (Johnson Open. Rpt.) at ¶¶ 275, 283.  ████████████████

███████████████████████████████████████████

███

   ████████████████████████████████████████

███████████████████████████████████████████

---

[4] Dr. Johnson's testimony does not evidence ████████████████████████████████.  Opp. at 8-9.  This Johnson testimony, however, ████████████████████████████████.  *Id.*, citing Dkt. No. 131-5 (Johnson Dep. Tr.) at 85:1-4.

██████████████████.[5]  Neither is evidence that the asserted SpeechWorks/Nuance system ever existed.  Defendants' claim is akin to asserting that Nuance OMS and Windows 95 are now implementations of one another merely because Microsoft acquired Nuance in 2021.  Such a claim is not credible without some comparison or identification of technical details of the underlying technology to support such a claim.

### 2.    The SpeechWorks/Nuance System was Not Publicly Available.

Defendants entirely failed to address Freshub's argument regarding public availability and accessibility of the alleged SpeechWorks/Nuance System in the U.S.  Defendants have no evidence that the SpeechWorks/Nuance System was ever released, sold, publicly demonstrated, ███████████████████████████████, prior to the Asserted Patents' priority date.  For example, there are no marketing documents or sales records.  While Defendants subpoenaed Nuance for SpeechWorks, ScanSoft and Nuance OMS documents, ███████ ███████████████████████████████ because Nuance never found any Nuance OMS documents (or anyone knowledgeable about Nuance OMS), likely because Nuance OMS was never made publicly available or offered for sale.  Dkt. No. 136, ¶¶ 11, 22, 23; *see also* Jariwala Decl., Ex. 4.  Because there is no evidence, much less clear and convincing evidence, of public release in the U.S., the SpeechWorks/Nuance System does not qualify for prior art.  Pre-AIA 35 U.S.C. §§ 102(a-b).

Further, Defendants do not address the fact that Dr. Johnson relied upon Nuance OMS documents showing ███████████████████████████████████████████ ███████.  *See* Motion at 13-14.  Even Nuance was unable to locate any Nuance OMS documents,

---

[5] ███████████████████████████████████████████ ███████.  Jariwala Reply Decl., Ex. 4 at 3; *id.*, Ex. 5 (Pepper Dep. Tr.) at 12:18-13:4; Dkt. No. 136-12.

despite finding older documents ███████████████████████, further proving that

Nuance OMS was never made publicly available or accessible in the U.S.  Dkt. No. 136, ¶ 11.

Defendants have no evidence that Nuance OMS was ever offered for sale, sold, publicly

accessible or ever used in the U.S.[6]  *Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture,*

*Inc.*, 339 F. Supp. 3d 803, 836-39 (N.D. Ill. 2018) (summary judgment grant of validity because

no clear and convincing evidence that the alleged prior art systems existed, were publicly

accessible, or on sale in the U.S.).

To the extent that Defendants now argue that Nuance OMS can be combined with ████

███████████████████████ for obviousness (Opp. at 10), such an argument concedes that

██████████████████████ are not part of Nuance OMS.  As set forth in Freshub's Motion to

Strike, ███████████████████ should be stricken from the case.  Dkt. No. 109.

## C.     Defendants Cannot Prove Invalidity under 35 U.S.C. §112 and §101.

Summary judgment should be granted on enablement, written description ("the §112

issues") and eligibility ("§101 issues") because Defendants' expert never did the proper analysis

needed to prove each of these defenses.  For enablement, Dr. Johnson needed to analyze why

persons of ordinary skill in the art ("POSA") attempting to make and use the claimed invention

would have allegedly been required to use efforts and experimentation outside the skills and

knowledge already available to them.  For written description, Dr. Johnson was required to

analyze why the disclosures of the specification, including the original claims, allegedly would

not have allowed a POSA to understand that the inventors actually invented what is claimed.  For

eligibility, Dr. Johnson was required to do a claim-by-claim analysis, and establish that the claim

elements both individually and as an ordered combination were allegedly well-understood,

---

[6] Defendants also have no evidence ██████████████████████████████████████████

routine and conventional to one of ordinary skill.  Because he (and Defendants) never did any of the required analysis, Defendants have no evidence to meet their clear and convincing burden of proof.[7]  *Motorola*, 121 F.3d at 1473 (conclusory expert testimony and unsupported statements insufficient for clear and convincing burden of proof).

### 1. The Specification Teaches One of Skill in the Art How to Make and Use the Claimed Invention.

Defendants identified five groups of citations from Dr. Johnson's expert report to purportedly support their enablement defense.  An analysis of these demonstrates that most of the citations do not pertain to enablement, and the one group that purportedly relates to enablement is conclusory or irrelevant, none of which meet the clear and convincing standard.

The first group of citations is ¶¶ 117-245 of Dr. Johnson's report ("Group 1"), which "discuss[es] the state of the art in the field of voice processing systems."  Opp. at 11.  However, Group 1 cuts directly against Defendants' argument that a POSA would not know how to make a voice processing system with the guidance of the specification.  Instead, Group 1 consists of 128 paragraphs, detailing Dr. Johnson's opinion that a POSA *would* have numerous algorithms and voice recognition software available at their disposal when building the claimed voice processing system.  Dkt. No. 109-3 (Johnson Open. Rpt.) at ¶¶ 117-245; *see also* Dkt. No. 112-9 (Singh Rpt.) at ¶ 32.  As such, Group 1 is not evidence of a lack of enablement, but rather Dr. Johnson's opinion that a POSA would have many tools at their disposal to make the claimed system with the guidance of the specification during the relevant timeframe.

---

[7] Defendants fleetingly claim that there are no factual disputes for the §112 and §101 issues (Opp. at 10), but they are applying the wrong standard.  The issue is whether Defendants provided sufficient evidence to support their defenses.  Moreover, Freshub's experts, Drs. Singh and Striegel, provided an extensive analysis explaining why the Asserted Patent are valid under §112 and §101.  *See* Dkt. No. 139 at 13-14, 16-22.

The next group of citations is ¶¶ 71-75 of Dr. Johnson's report ("Group 2"), which discusses some of the disclosures from the Asserted Patents.  However, Group 2 does not provide any analysis as to whether a skilled artisan could make and use the claimed invention using their knowledge of the art.  Instead, Group 2 actually points out that the specification explicitly teaches to use "voice recognition software to translate the voice recording files into text files" (Dkt. No. 109-3 (Johnson Open. Rpt.) at ¶ 72), among other disclosures, supporting that the Asserted Patents are enabled because a POSA can use readily available voice recognition software when building the claimed voice processing system.

Group 3 consists of ¶¶ 81, 87, 97 and 106 of Dr. Johnson's report.  These paragraphs do not provide an enablement analysis, but instead conclusory state that "there is no description of any structure or method for performing the claimed steps related to voice **recognition**."  *Id.* at ¶¶ 81, 87, 97 and 106.  Apart from being wrong as the Asserted Patents specifically provide that a skilled artisan could use voice recognition software to perform voice recognition, these conclusory remarks do not analyze whether a POSA would be able to build the claimed voice **processing** system using their knowledge in the field.

Group 4 consists of ¶¶ 1365-1372 of Dr. Johnson's report is his actual opinion regarding enablement.  Paragraph 1365 is the only discussion of the Asserted Patents and rather than provide analysis of the specification, Dr. Johnson merely concludes without any descriptions that a POSA would have to undergo extensive experimentation.  *Id.* at ¶ 1365.  However, such "[u]nsubstantiated statements indicating that experimentation would be 'difficult' and 'complicated' are not sufficient" to prove lack of enablement by clear and convincing evidence, as "a considerable amount of experimentation is permissible, if it is merely routine, or if the specification in questions provides a reasonable amount of guidance." *Cephalon, Inc. v. Watson*

*Pharm., Inc.*, 707 F.3d 1330, 1339 (Fed. Cir. 2013) (citations omitted).  Thus, Dr. Johnson's report does not provide a complete analysis regarding enablement because he does not analyze the specification which is fatal to Defendants' enablement defense.

The remaining paragraphs of Group 4 and Group 5 (consisting of ¶¶ 1367 and 1387) discuss the Ikan and Freshub products which, contrary to Defendants' assertions, practice the Asserted Patents, further demonstrating that a skilled artisan could make and use the claimed invention.  Dkt. No. 119-2 (Cole Rpt.) at ¶¶ 74-91, Appendices C and D.  Indeed, several news outlets, including the NY Times and Forbes, praised the revolutionary Ikan products, cementing the fact that Ikan was able to manufacture the claimed inventions.  Jariwala Reply Decl., Exs. 6-7.  Whether Ikan and Freshub practiced the Asserted Patents, however, is not a substitute for the requisite analysis of the specification to determine whether it teaches a POSA to make and use the claimed invention.  The absence of such evidence demonstrates that Defendants have no enablement challenge.

Defendants also have not come forward with any evidence regarding the alleged amount of experimentation that would be required and whether that unknown amount would be undue.  Dr. Johnson's conclusory opinion that an iterative trial-and-error process would be required and that one would have to allegedly invent their own algorithms, write software and conduct experiments is not evidence of his experimentation analysis.  *See* Opp. at 12.  He never presents the alleged quantity of experimentation and whether it would be undue, which is necessary because an iterative trial-and-error process is simply experimentation and writing software and conducting experiments are routine.  *Cephalon*, 707 F.3d at 1339 (experimentation that is routine or involves known or commonly used techniques is not undue).  Without any evidence of the

amount of experimentation that would be required, Defendants simply cannot meet their burden of proof.

Finally, Defendants make a passing reference to the testimony of Dr. Polish, Freshub's validity expert who addressed §§102 and 103, not any opinions on §112 or §101. Opp. at 12. Defendants misconstrue Dr. Polish's testimony while ignoring that he confirmed that a POSA could identify the new Guns N' Roses CD, an example from an alleged prior art reference, using the guidance of the Asserted Patents. Dkt. No. 130-1, Ex. 7 (Polish Dep. Tr.) at 154:13-155:10. Dr. Polish simply testified that the Asserted Patents themselves do not contain a Guns N' Roses CD example. *Id.* at 156:12-16. In light of the foregoing, Defendants do not have sufficient evidence to maintain their enablement defense.

### 2. The Specification Conveys that the Inventors Had Possession of the Invention.

Defendants' citations to oppose Freshub's Motion regarding written description defense is limited to Groups 2 and 3 (identified above), and ¶¶ 1373-78 of Dr. Johnson's report ("Group 6"). These three groups of citations, however, do nothing to support Defendants' written description claim because they are not an analysis of why the disclosures of the specification, including the original claims, allegedly would not have allowed a POSA understand that the inventors actually invented what is claimed.

First, Groups 2 and 3 lend no support to Defendants' written description defense. As noted above, Group 2 generally discusses certain passages from the Asserted Patents' specifications. They contain none of the requisite analysis regarding whether the inventors possessed the claimed invention. Dkt. No. 109-3 (Johnson Open. Rpt.) at ¶¶ 71-75. Group 3 likewise fails because it provides only conclusory remarks about voice recognition software, but does not provide any analysis as to whether the inventors possessed a voice processing system

that used voice recognition software that was readily available in the 2004 timeframe.  *Id.* at ¶¶ 81, 87, 97, 106.

Group 6, which is Dr. Johnson's actual written description analysis, is limited to six paragraphs of conclusory remarks that the functions of translating, matching and identifying are not taught in the specification.  Noticeably absent, however, are any citations to the specification or explanations why the algorithms disclosed in the intrinsic record are insufficient to convey that the inventors had possession of the claimed invention.  He repeats his incorrect assertions that the Ikan and Freshub products do not practice the Asserted Patents.  Apart from being wrong and contradictory to the articles praising Ikan's and Freshub's technology, Dr. Johnson's statements are not an analysis of the Asserted Patents' disclosure.  Ultimately, Defendants' written description challenge has no support to survive summary judgment.

### 3.    Defendants Cannot Prove Each Asserted Claim of the Asserted Patents are Abstract.

Defendants' Opposition lacks the requisite analysis of each Asserted Claim for patent eligibility which is fatal to Defendants' §101 challenge.  Despite the Court instructing Defendants to "brief the patent ineligibility of each asserted claim" should they chose to refile their §101 motion (Dkt. No. 28 at 1-2), Defendants have not done so.  The ten pages Defendants rely on for Dr. Johnson's eligibility analysis only addresses a single claim in its entirety.  Opp. at 16 (citing Dkt. No. 109-3 (Johnson Open. Rpt.) at ¶¶ 1341-1364).  Defendants' claim that Dr. Johnson only considered "common limitations in each of the asserted claims" does not relieve Defendants of doing the requisite analysis for each asserted claim.  Opp. at 17.  This failure alone is sufficient to grant Freshub's Motion.

Even Defendants' "common limitations" analysis is flawed because it is contrary to the Court's claim construction order.  The Court rejected Defendants' argument during claim

construction that "the translating, matching and identifying terms" were means-plus-function elements and held that the terms were to be given their plain and ordinary meaning.  Dkt. No. 63. Yet, Dr. Johnson's entire analysis assumes that these terms are means-plus-function terms.  Dkt. No. 109-3 (Johnson Open. Rpt.) at ¶¶ 1343-1352.  Application of the wrong claim constructions renders Dr. Johnson's improper and there is no basis for concluding the claims are abstract.

Defendants' reliance on *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC* with respect to "functional" elements is inapplicable to the Asserted Claims, as there are specific structures and steps for achieving each claim here.  967 F.3d 1285, 1295 (Fed. Cir. 2020).  In *Am. Axle*, a method claims was found ineligible because it "would prohibit all other persons from making the same thing by any means whatsoever."  *Id*. at 1295-96 (internal quotations omitted).  But Dr. Johnson himself admits that there are many different voice processing systems in the art, and that the Asserted Claims are directed to one particular system for performing voice processing.  Dkt. No. 111-3 (Johnson Rebuttal Rpt.) at ¶¶ 464-474.  Specifically, Dr. Johnson identifies at least three systems that could accomplish the results of the claimed inventions without infringing the Asserted Claims, including systems that perform voice processing locally in a person's home rather than in the cloud.  *Id*.  As such, *Am. Axle* is easily distinguished because Dr. Johnson confirms there are no preemption issues with the Asserted Claims.

Defendants' patent eligibility analysis is also incomplete because Dr. Johnson provides no evidence as to whether the distributed voice processing systems of the Asserted Claims were routine or conventional in 2004, as he cannot.  *See* Dkt. No. 111-3 (Johnson Rebuttal Rpt.) at ¶ 445; Dkt. No. 109-3 (Johnson Open. Rpt.) at § V.F. (discussing hypothetical components encapsulated in the Asserted Claims and unable to show how they created the claimed voice processing distributed architecture).  Freshub's experts have affirmatively confirmed that the

voice processing systems disclosed in the Asserted Patents were not conventional.[8]  Dkt. No.

106-6 (Striegel Rebuttal Rpt.) at ¶¶ 60, 77, 91, 108, 120, 137, 165, 189, 206, 231.  Thus,

Defendants have no evidence showing that the elements of the Asserted Claims, both

individually and as an ordered combination, were well-understood, routine, and conventional in

the relevant timeframe sufficient to overcome the industry praise that the novel distributed voice

processing architecture garnered from the industry.  *See* Motion at 18-19; Dkt. No. 106-6

(Striegel Rebuttal Rpt.) at ¶¶ 69-70, 100-101, 129-130, 157-158, 179-180, 198-199, 223-224,

and 258-261.  The lack of evidence is sufficient to grant summary judgment as Defendants

needed to present clear and convincing evidence.  *See Berkheimer v. HP Inc*., 881 F.3d 1360,

1369 (Fed. Cir. 2018).

Defendants' assertion that the Court should ignore the Patent Office's determination that

the Asserted Patents satisfied §101 is an attempt to shift the focus away from Defendants'

failings to even attempt to meet the requisite analysis for their challenge.  Here, the Examiner

cited and relied upon the *Alice* decision itself, cementing that Defendants needed clear and

convincing evidence for their §101 challenge, which Defendants simply do not have.

Defendants' citation to *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367 (Fed. Cir. 2021)

(Opp. at 18) is irrelevant because that case was reviewing a PTAB Final Written Decision on a

Covered Business Method, and does not relate at all to deference to be given an examiner that

applied *Alice*, as is the case here.  As such, Freshub's Motion should be granted.

---

[8] Defendants' citation to the testimony of Dr. Medvidovic, Freshub's infringement expert, (Opp. at 16-17), is a red herring because his testimony regarding processing Google searches ***today*** has nothing to do with voice processing technology, and concerns the wrong timeframe.  Dkt. No. 130-1, Ex. 9 (Medvidovic Dep. Tr.) at 55:1-57:22.  Further, Dr. Singh testified that she did not analyze what architectures may have been conventional or well-known in 2000.  Dkt. No. 131-6 (Singh Dep. Tr.) at 128:16-129:12.

## III.   CONCLUSION

For the foregoing reasons, Freshub respectfully requests the Court to grant Freshub's

Motion.

Respectfully submitted

Dated:  April 16, 2021          By: */s/ Lisa Kobialka*
                                    Paul J. Andre (*pro hac vice*)
                                    Lisa Kobialka (*pro hac vice*)
                                    James Hannah (*pro hac vice*)
                                    KRAMER LEVIN NAFTALIS
                                    & FRANKEL LLP
                                    990 Marsh Road
                                    Menlo Park, CA 94025
                                    Telephone: (650) 752-1700
                                    Facsimile: (650) 752-1800
                                    pandre@kramerlevin.com
                                    lkobialka@kramerlevin.com
                                    jhannah@kramerlevin.com

                                    John Palmer
                                    Texas Bar No. 15430600
                                    NAMAN HOWELL SMITH
                                    & LEE PLLC
                                    400 Austin Ave., Suite 800,
                                    P.O. Box 1470
                                    Waco, TX 76701
                                    Telephone: (254) 755-4100
                                    Facsimile: (254) 754-6331
                                    palmer@namanhowell.com

                                    *Attorneys for Plaintiffs*
                                    FRESHUB, INC. and FRESHUB, LTD.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on April 20, 2021, the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send a Notice of Electronic filing on all counsel of record for all other parties who have appeared in this action on the date of such service.

*/s/ Lisa Kobialka*
Lisa Kobialka
