UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD., | |
| Plaintiffs, | |
| v. | Case No. 1:19-CV-00885-ADA |
| AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation, | **PUBLIC VERSION** |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT OF INEQUITABLE CONDUCT**

# TABLE OF CONTENTS

I.   INTRODUCTION ----------------------------------------------------------------------------- 1

II.  ARGUMENT ----------------------------------------------------------------------------------- 2

    A.   Ikan's statement that it never intended to abandon the '291 application
        was material to the Patent Office's decision to revive the application -------------- 2

    B.   Ikan's statement that it never intended to abandon the '291 application
        was false and made to deceive the Patent Office -------------------------------------- 3

        1.   No evidence indicates that an employee layoff caused Ikan to
            abandon the '291 application by mistake-------------------------------------- 5

        2.   Freshub's investments in patent prosecution are not in evidence
            and irrelevant ------------------------------------------------------------------------- 6

        3.   The assignment document shows that Ikan knew and intended to
            abandon the '291 application in 2012 ------------------------------------------- 6

        4.   Mr. Weiss's failed to investigate the abandonment of the '291
            application-------------------------------------------------------------------------------- 8

    C.   Ikan's inequitable conduct during the prosecution of the '291 application
        renders the asserted patents unenforceable ----------------------------------------------- 9

III. CONCLUSION ------------------------------------------------------------------------------------10

# TABLE OF AUTHORITIES

***Cases:***                                                                                    ***Page(s):***

*3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*,
    228 F. Supp. 3d 1331 (N.D. Ga. 2017) ..................................................................8

*Barry v. Medtronic, Inc*.,
    245 F. Supp. 3d 793 (E.D. Tex. 2017), *aff'd*, 914 F.3d 1310 (Fed. Cir.
    2019), *cert. denied*, 140 S. Ct. 869 (2020) ..........................................................7

*Baxter Int'l, Inc. v. McGaw, Inc.*,
    149 F.3d 1321 (Fed. Cir. 1998) ...........................................................................10

*Chevron Corp. v. Pennzoil Co*.,
    974 F.2d 1156 (9th Cir. 1992) ...............................................................................9

*Hoffmann-La Roche, Inc. v. Promega Corp*,
    319 F. Supp. 2d 1011 (N.D. Cal. 2004) ..............................................................10

*In re Rembrandt Techs. LP Patent Litig.*,
    899 F.3d 1254 (Fed. Cir. 2018) .............................................................................8

*In re Rosuvastatin Calcium Patent Litig.*,
    703 F.3d 511 (Fed. Cir. 2012) .........................................................................2, 3

*Isaacs v. OCE Bus. Servs., Inc.*,
    968 F. Supp. 2d 564 (S.D.N.Y. 2013) ...................................................................7

*Regeneron Pharm., Inc. v. Merus N.V.*,
    864 F.3d 1343 (Fed. Cir. 2017) .............................................................................7

*Roach v. Allstate Indem. Co.*,
    476 F. App'x 778 (5th Cir. 2012) .........................................................................1

*Sierra Frac Sand, L.L.C. v. CDE Global Ltd.*,
    960 F.3d 200 (5th Cir. 2020) ................................................................................8

*Therasense, Inc. v. Becton, Dickinson & Co*.
    649 F.3d 1276 (Fed. Cir. 2011) ......................................................................2, 3, 7

*TransWeb, LLC v. 3M Innovative Props. Co.*,
    812 F.3d 1295 (Fed. Cir. 2016) .............................................................................7

*Other Authorities:*

37 C.F.R. § 1.137(a)..........................................................................................................5

37 C.F.R. § 11.18(b)(2)....................................................................................................5

M.P.E.P. § 711.03(c).........................................................................................................5

**INDEX OF EXHIBITS**

## Table of Exhibits to the Declaration of Todd R. Gregorian

| Exhibit | Description | Short Cite |
|---------|-------------|------------|
| 1 | Transcript of the deposition of William Adam, taken December 29, 2020 (excerpts) | Adam Dep. Tr. |
| 2 | Transcript of the deposition of Robert Stoll, taken March 19, 2021 (excerpts) | Stoll Dep. Tr. |
| 3 | Transcript of the deposition of David Weis, taken January 27, 2021 (excerpts) | Weiss Dep. Tr. |

I.       INTRODUCTION

The only evidence of record shows that that Ikan made a false material statement with the intent to deceive the Patent Office when it requested revival of the '291 application.  That is not just the most reasonable inference that can be drawn from the evidence—the standard Amazon must meet to win summary judgment—there is simply no contrary "evidence" beyond mere attorney speculation of the sort that this Court may not credit at summary judgment.  *See Roach v. Allstate Indem. Co.*, 476 F. App'x 778, 780 (5th Cir. 2012) (citing *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

Freshub attempts to reframe this as Amazon "shifting the burden of proof" on inequitable conduct.  (Opp. at 21.)  But to meet its burden, Amazon need only show the absence of a material dispute *in the record*; it does not need to rebut every hypothetical that Freshub offers.  Freshub suggests that perhaps Ikan's experienced patent prosecutor David Weiss forgot to calendar the deadline to respond to a Final Office Action rejecting all claims of the '291 application he was prosecuting; then also forgot to send it to his client as is his usual practice; then did the same with respect to a Notice of Abandonment; and then failed to secure his client's approval of the abandonment, as he testified he does to protect his firm from malpractice claims.  Months later, Mr. Weiss then prepared an assignment document correctly listing the '291 application as abandoned (but without understanding the significance of his own categorization), which his client Mr. Douer then either did not read or understand before signing in front of a notary.  (And all of this while Mr. Weiss and Mr. Douer diligently prosecuted Ikan's other applications, including *deciding to abandon another application that had also received a rejection from the Patent Office*.)  Five years later, some unidentified person then "discovered" these mistakes under unspecified circumstances and Ikan sought to revive the application.  And Mr. Weiss, who in preparing the revival petition looked at the assignment *that shows his and Mr. Douer's knowledge of and assent*

*to the abandonment*, then unearthed some other undisclosed fact that controverted the assignment and showed the abandonment was instead a mistake.  The problem for Freshub is that, once under oath, Mr. Weiss would not testify to any of these assertions, and Mr. Douer—even with an offer of representation by Freshub's attorneys—refused to testify at all.

Freshub therefore turns to irrelevant digressions.  It argues, for example, that inequitable conduct is a disfavored defense (Opp. at 13), citing to *Therasense, Inc. v. Becton, Dickinson & Co*. 649 F.3d 1276, 1289-90 (Fed. Cir. 2011), yet failing to mention that case changed the legal standard for inequitable conduct such that it is no longer disfavored.  Freshub also attempts to turn the limited record against Amazon, faulting it for not pursuing discovery from named inventors other than Sony Douer—Messrs. Zsigmond, Wagner, and Yoshizawa—while Freshub knows full well those witnesses all live overseas and were unavailable to testify.  (Ex. 1 (Adam Dep. Tr.) at 51:11-19, 54:3-19.)  The undisputed record shows that the abandonment was intentional and that Mr. Weiss uncovered no reason to believe otherwise before he swore falsely in order to revive the '291 application for his client.  The Court should grant summary judgment.

## II.    ARGUMENT

### A.    Ikan's statement that it never intended to abandon the '291 application was material to the Patent Office's decision to revive the application.

As discussed previously, the standard for materiality is that the Patent Office "would not have allowed the claim but for the nondisclosure or misrepresentation."  *In re Rosuvastatin Calcium Patent Litig.,* 703 F.3d 511, 519 (Fed. Cir. 2012).  Freshub's opposition does not contest that the Patent Office's express reliance on Ikan's statement of unintentional abandonment makes it material to patentability.  ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████  There is thus no dispute that the statement is material.

**B.      Ikan's statement that it never intended to abandon the '291 application was false and made to deceive the Patent Office.**

A patentee's actions "constitute material misrepresentation with intent to deceive" so long as the "intent to deceive the PTO [is] the single most reasonable inference able to be drawn from the evidence." *Rosuvastatin*, 703 F.2d. at 519 (citation omitted).  "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290.  Here, the most reasonable inference is that Ikan knew and intended the abandonment because it received multiple notices from the Patent Office and did not respond; confirmed the abandonment in the assignment document; and sought to revive only years later once it perceived its claims might have value in light of voice shopping technology on the market. The following chart summarizes the evidence:

| Falsity | | |
|---|---|---|
| *Amazon's evidence* | *Freshub's evidence* | *Amazon's Rebuttal* |
| • The Patent Office issued an Office Action rejecting all claims on June 6, 2011.  (Dkt. 102-3.)<br><br>• The prosecuting attorney, David Weiss of Knobbe Martens LLP, received the rejection for Ikan; he forwards such communications to his client.  (Dkt. 102-4 (Weiss Depo.) at 91:15-92:8, 93:2-7.)<br><br>• Ikan did not respond by the deadline to continue prosecution.  (*Id.* at 92:18-20.)<br><br>• On January 3, 2012, the Patent Office sent a Notice of Abandonment.  (*Id.* at 93:2-7.)<br><br>• Mr. Weiss received this notice for Ikan; he forwards such communications to his client.  (*Id.* at 91:15-92:8, 93:2-7.)<br><br>• Mr. Weiss also does not allow a patent application to go abandoned without | • Ikan laid off its employees months later, during October 2011.  (Dkt. 135-3 (Adam Depo Tr.) at 140:2-5.) | • Freshub provided no evidence that the layoffs impacted Ikan's patent prosecution in any way.<br><br>• Ikan did not terminate either Mr. Douer or Mr. Weiss.<br><br>• Mr. Weiss's firm, Knobbe Martens, maintains its own files and docketing system to calendar deadlines; these were not impacted by the Ikan layoff. (Dkt. 102-4 at 89:5-16.)<br><br>• Mr. Douer and Mr. Weiss continued to prosecute other patent applications around the time of the layoffs.  (Dkts. 102-20 through 102-25; Dkt. 102-4 |

| | | |
|---|---|---|
| obtaining his client's express approval. (*Id.* at 37:10-23, 23:23-24:9, 24:14-22.) | | at 138:24-139:2, 141:6-22.) |
| • Ikan and Mr. Weiss took no action in response to the abandonment notice and allowed the '291 application to go abandoned. (*Id.* at 92:5-20.) | | • The assignment document confirming the abandonment was prepared over a year after the layoff. (Dkt. 102-6.) |
| • Around December 4, 2012, Mr. Weiss prepared an assignment document in which he categorized the '291 application among a list of Ikan applications that were "Inactive/Abandoned/Expired." (Dkt. 102-6.) | | • There is no evidence or testimony about the 2016 or 2017 "discovery" of any records concerning the '291 application that were lost or overlooked during the layoffs before Ikan sought to revive. |
| • Sony (Sion) Douer, Ikan's principal and a named inventor on the application, represented both entities in the transaction and signed the document before a notary on behalf of Ikan Technologies. (Dkt. 102-4 at 101:25-102:7, 103:3-19, 103:23-104:2.) | | |
| • Neither Mr. Weiss nor Mr. Douer took any action to revive the application around the time of the assignment, and left it abandoned for five years. | | |
| • Ikan went on to abandon another application, No. 14/505,078, under similar circumstances: following a rejection from the Patent Office. (Dkt. 102-41 (Prosecution Timeline), 11/12/2014 rejection for 14/505,078.) | | |
| **Intent to Deceive** | | |
| *Amazon's evidence* | *Freshub's evidence* | *Rebuttal* |
| • During the five-year abandonment, voice shopping technologies became valuable; and Mr. Weiss received notices about related patents that his firm prosecuted for Amazon. (Dkts. 102-9 through 102-12, Dkt. 102-4 at 52:13-53:2.) | • Ikan's petition complied with the Patent Office's requirements for revival.[1] (Dkt. 105-9 (Stoll Report) ¶ 98.) | • It is irrelevant that the petition complied with other Patent Office rules if Mr. Weiss falsely attested the abandonment was unintentional. |
| • Mr. Weiss knew when he filed the revival petition that the application had been | • The Patent Office did not request additional | • It is irrelevant that the Patent Office did not |

---

[1] Freshub continues to rely on the testimony of Robert Stoll. That testimony remains objectionable and irrelevant here for the reasons Amazon has explained in its earlier brief. (Dkt. 127 at 10-11 n.5.)

| | | |
|---|---|---|
| abandoned for five years. (Dkt. 102-4 at 91:15-92:8, 93:2-7; Dkt. 102- 6.) | information about the abandonment. (Dkt. 105-9 (Stoll Report) ¶ 98.) | request additional information as it chose instead to rely on the false statement. (Dkt. 102-16 at KNOBBE-000704.) |
| • Mr. Weiss knew that the Patent Office would not revive the application unless he swore that abandonment was unintentional. (*See* Dkt. 102-4 at 122:2-123:9); 37 C.F.R. § 1.137(a). | • A decision to misrepresent the abandonment could put Mr. Weiss's ability to practice at risk. | • This is the case for any prosecuting attorney who commits inequitable conduct; nonetheless, many attorneys have done so. |
| • Mr. Weiss knew the standards for determining whether an abandonment was intentional or inadvertent. (Dkt. 128-3 at 160:8-17, 189:13-190:1; M.P.E.P. § 711.03(c).) | • The Patent Office routinely grants petitions to revive. (Dkt. 105-9 (Stoll Report) ¶ 80.) | • That approval is routine would have indicated to Mr. Weiss and Mr. Douer that the Patent Office would not scrutinize the misrepresentation. |
| • He was also aware that the rules required him to investigate the abandonment. (Dkt. 102-4 at 127:9-128:7); 37 C.F.R. § 11.18(b)(2). | • Mr. Weiss *testified* that he performed an "investigation" into Ikan's intent to abandon. (Dkt. 105-5 at 39:2-40:1; 43:4-14.) | • Mr. Weiss could identify no step he had taken to investigate the abandonment other than looking at the assignment document. |
| • Mr. Weiss performed no investigation into the abandonment. | | |
| • Along with the revival petition, Mr. Weiss reviewed and then recorded the 2012 assignment signed by Mr. Douer that showed the '291 application as abandoned. (Dkt. 102-4 at 101:25-102:7, 103:3-19; 103:23-104:2.) | | • Mr. Weiss's firm maintains a record *showing when its clients approved an abandonment*. Mr. Weiss testified that he had "never gone back to look" at this record and then said he could not recall. (Dkt. 105-5 at 39:2-40:1; Dkt. 102-4 at 138:10-22.) |
| • Mr. Weiss could identify no fact indicating that the abandonment was unintentional. | | |

Freshub's unsupported attorney argument and irrelevant evidence do not give rise to a disputed material issue.

## 1. No evidence indicates that an employee layoff caused Ikan to abandon the '291 application by mistake.

Freshub has previously argued without evidence that a corporate restructuring or layoff

caused Ikan to abandon prosecution of the '291 application inadvertently.  It now relies on three lines of testimony from a former Ikan employee, William Adam, to the effect that a layoff occurred in October 2011.  (Opp. at 3; Dkt. 135-3 at 140:2-5.)  But there is no evidence that the layoff impacted Ikan's patent prosecution activity, let alone evidence that it caused Ikan to misplace the '291 application.  Mr. Douer remained at Ikan.  (Adam Dep. Tr. at 141:8-11; Dkt. 102-4 (Weiss Depo.) at 78:17-19.)  Mr. Weiss remained Ikan's outside attorney (Dkt. 102-4 at 78:9-19), and his records at the Knobbe Martens firm were therefore not impacted by Ikan's restructuring.  Both continued to prosecute other applications on behalf of Ikan throughout the period of abandonment. (Dkt. 102-41.)  And Mr. Weiss prepared and Mr. Douer signed the assignment document transferring the abandoned application a year *after* Ikan completed layoffs.

### 2. Freshub's investments in patent prosecution are not in evidence and irrelevant.

Freshub argues that it is unreasonable to infer that Ikan would  "single out" the '291 application for abandonment after prosecuting it for six years and incurring costs to do so.  (Opp. at 19.)  But Freshub provided no evidence of what Ikan spent on the '291 application.  Moreover, Ikan abandoned the application only once it received a Final Office Action rejecting the claims. Around that time, it did the same with respect to another application, No. 14/505,078, abandoning prosecution after receiving a rejection.  (Dkt. 102-41.)  And the assignment document reflects a total of 18 abandoned, "inactive," or "expired" applications in Ikan's portfolio as of 2012.  (Dkt. 102-6.)  Ikan's abandonment of applications was thus routine.

### 3. The assignment document shows that Ikan knew and intended to abandon the '291 application in 2012.

Freshub argues that the patent assignment document does not show that Ikan knew or intended to abandon the '291 application, because it "merely moved patent assets between Ikan companies."  (Opp. at 11.)  But regardless of this intended purpose, the assignment also shows that

Ikan knew of the abandonment in 2012 yet chose to do nothing to revive it at that time.

First, Mr. Weiss knew this because he prepared the document categorizing the '291 application as abandoned.  Freshub skips over this fact to argue that Mr. Weiss's categorization was confusing (Opp. at 12-13),[2] ignoring the fact that Ikan is charged with Mr. Weiss's knowledge and actions.  *See, e.g.*, *Barry v. Medtronic, Inc.*, 245 F. Supp. 3d 793, 801 (E.D. Tex. 2017) ("knowledge and actions of applicant's attorney are chargeable to [the] applicant") (modification in original, citation omitted), *aff'd*, 914 F.3d 1310 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 869 (2020).  Freshub tries to distinguish the cases on this point as either pre-dating *Therasense* or involving different facts (Opp. at 13-14), but Freshub does not contest the basic point of law because it cannot.  The standard has not changed, and the attorney's knowledge is still chargeable to a client after *Therasense*.  *See Regeneron Pharm., Inc. v. Merus N.V.,* 864 F.3d 1343, 1346 (Fed. Cir. 2017) (affirming district court's finding of inequitable conduct as to client based on patent prosecutor's withholding of material references); *see also TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1304 (Fed. Cir. 2016) (affirming district court's finding of inequitable conduct based on inventor and attorney both withholding of prior art during prosecution).  Knowledge of the abandonment is imputed to Ikan through Mr. Weiss.

Moreover, Mr. Douer's agreement on behalf of Ikan is also significant.  Freshub speculates that Mr. Douer did not read the document carefully or "understand the nuances" before signing it before a notary.  (Opp. at 14.)  But a signatory to an agreement is charged with knowledge of its terms.  *See Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) (holding,

---

[2] Freshub's own patent procedure expert Mr. Stoll confirmed that only the term "Abandoned" in the assignment's heading "Inactive/Abandoned/Expired Applications" has any meaning for a U.S. patent application. ████████████████████████████████████████ ████████████ The assignment includes a number of non-U.S. applications.

under New York law, where both Ikan entities are located, that a person "who signs or accepts a written contract is conclusively presumed to know its contents and assent to them") (citation omitted); *see also Sierra Frac Sand, L.L.C. v. CDE Global Ltd.,* 960 F.3d 200, 204 (5th Cir. 2020) (holding under Texas law, that "[a] party who signs an agreement is presumed to know its contents") (citation omitted).  In a dispute with the transferee, Ikan could not contest its knowledge of the abandonment; there is no reason to apply a different rule here.  And again, no actual *evidence* supports Freshub's claim that Mr. Douer did not know what he was signing.  Mr. Douer evaded service to avoid answering these questions.  (Dkt. 128-2 at 2; Dkt. 108 at 18:3-12; 19:6-17.)

### 4.    Mr. Weiss's failed to investigate the abandonment of the '291 application.

Freshub does not contest that if Mr. Weiss *either* knew the '291 application was abandoned intentionally *or* failed to investigate whether the abandonment was intentional, Amazon is entitled to summary judgment of intent to deceive.  (Opp. at 15-21.)  Freshub argues only that the facts do not support either conclusion.[3]  Freshub states that it is "simply false" that Mr. Weiss failed to investigate the abandonment.  (Opp. at 17.)  But the only evidence that Freshub offers to show an "investigation" is Mr. Weiss's testimony that he knew that Mr. Douer signed the assignment listing the application as abandoned.  *Id.* (citing Weiss Depo. 132:2-17.)  In *In re Rembrandt Technologies LP Patent Litig.*, 899 F.3d 1254 (Fed. Cir. 2018), a spreadsheet identifying abandoned patents was enough to show one of the parties knew of their abandonment.  *Id.* at 1274-75.  The only information that Mr. Weiss considered also tends to show that abandonment was deliberate.

---

[3] Specifically, Freshub does not argue that the holding of *3D Medical Imaging Systems, LLC v. Visage Imaging, Inc.*, 228 F. Supp. 3d 1331 (N.D. Ga. 2017)—that a failure to investigate whether an abandonment was intentional establishes intent to deceive—was wrong.  Instead, Freshub claims that "particularly egregious facts readily distinguish" *3D Medical* from this case. (Opp. at 21.)  But the only difference Freshub identifies is that the party in *3D Medical* admitted he performed no investigation, whereas here Mr. Weiss merely claimed without evidence to have performed one.

Freshub also relies on Mr. Weiss' statement that there are two ways that he *could have* confirmed an abandonment was unintentional, checking the docketing system or his client correspondence. (Opp. at 17.) But there is no evidence that he did either one. He testified that his firm memorializes the client's express approval in the docketing system before allowing any application to go abandoned. (Dkt. 102-4 at 137:17-138:23.) But Mr. Weiss had no idea how the abandonment approval was even noted in the system, because he had "never gone back to look." (Dkt. 105-5 at 39:2-40:1.) He later claimed that he could not recall if he had done so. (Dkt. 102-4 at 138:22-23.) Similarly, there is no client correspondence showing that the abandonment was inadvertent or a mistake, nor is there any evidence that Mr. Weiss checked the correspondence. There is thus no record evidence that Mr. Weiss performed an investigation or found any facts that would support his sworn statement, and therefore summary judgment is appropriate.[4]

### C.     Ikan's inequitable conduct during the prosecution of the '291 application renders the asserted patents unenforceable.

Freshub does not dispute that inequitable conduct in the prosecution of a parent application has an immediate and necessary relation to the prosecution of a continuation application based on that parent. (Opp. at 22-23.) That concession controls here. If the Court rules that Ikan committed inequitable conduct in prosecuting the parent application, the asserted patents are unenforceable.

---

[4] Freshub argues that Amazon did not ask Mr. Weiss about his client correspondence, implying that Mr. Weiss checked it and found some evidence of docketing mistakes. (Opp. at 18.) Freshub also states that the communications among Mr. Weiss and the inventors before the revival petition were due to the "need to investigate the circumstances of the inadvertent abandonment." (Opp. at 17.) But there is no evidence of this. Moreover, Freshub and Knobbe Martens refused to let Mr. Weiss answer *any* questions about his client correspondence on the grounds of attorney-client privilege (Ex. 3 (Weiss Dep. Tr.) at 31:20-32:4, 32:12-22, 77:19-78:5, 96:21-98:8, 114:3-13, 115:16-116:8, 117:11-23, 128:17-129:1, 156:18-25, 178:23-179:14), and they withheld the correspondence itself based on the same objection. (Dkt. 102-14.) But "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield," *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992), and Freshub cannot rely on withheld communications without effecting a subject matter waiver. *See id.*

Freshub argues only two points in response.  First, Freshub contests that there was any inequitable conduct, a subject addressed above.  Second, Freshub contends that "immediate and necessary relation" is a high standard that *also* requires proof of particularly "egregious" facts. (*Id.* at 23.)  But that is not so.  The test asks whether the inequitable conduct in prosecuting the parent relates to the applicant's obtaining other patents *in some immediate way*; not how worthy of opprobrium the misconduct was.  This is shown by Freshub's own authorities.  In *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998), the parent application was subject to a restriction requirement and the applicant filed several divisional applications.  *Id*. at 1326.  It failed to disclose prior art relevant to two of these, and the court held the resulting patents unenforceable. *Id*.  But the undisclosed art was "not relevant to the claims" of a third patent.  *Id*. at 1331-32.  The court held this patent enforceable:  claims separated through a divisional application are not unenforceable where they "have no relation to" the misconduct in question or if the misconduct is "in no way material" to the prosecution of the separated claims.  *Id*.; *see also Hoffmann-La Roche, Inc. v. Promega Corp*, 319 F. Supp. 2d 1011, 1021-22 (N.D. Cal. 2004) (declining to extend unenforceability ruling to another patent based on mere similarities in subject matter, citations, and timing of prosecution).  Here the asserted patents would not exist if not for the claim that Ikan's abandonment was "unintentional" and thus are rendered unenforceable by Ikan's inequitable conduct in the prosecution of the '291 application.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant summary judgment of inequitable conduct in the prosecution of the asserted patents and hold each of them unenforceable.

Dated: April 16, 2021                          Respectfully submitted,


*Of Counsel:*                                  /s/ *J. David Hadden*
                                               J. David Hadden, CSB No. 176148
Barry K. Shelton (TX Bar #24055029)            dhadden@fenwick.com
bshelton@sheltoncoburn.com                     Saina S. Shamilov, CSB No. 215636
SHELTON COBURN LLP                             sshamilov@fenwick.com
311 RR 620 S, Suite 205                         Todd R. Gregorian (*Admitted Pro Hac Vice*)
Austin, TX 78734                               tgregorian@fenwick.com
Tel: (512) 263-2165                            Ravi R. Ranganath, CSB No. 272981
Fax: (512) 263-2166                            rranganath@fenwick.com
                                               Vigen Salmastlian, CSB No. 276846
Deron R. Dacus (TX Bar #00790553)              vsalmastlian@fenwick.com
ddacus@dacusfirm.com                           Allen Wang, CSB No. 278953
THE DACUS FIRM, P.C.                            allen.wang@fenwick.com
821 ESE Loop 323, Suite 430                    Eric B. Young, CSB No. 318754
Tyler, TX 75701                                eyoung@fenwick.com
Tel: (903) 705-1117                            **FENWICK & WEST LLP**
Fax: (903) 581-2543                            801 California Street
                                               Mountain View, CA  94041
                                               Telephone:  650.988.8500
                                               Facsimile:  650.938.5200

                                               *Counsel for Defendants*
                                               *AMAZON.COM, INC., AMAZON.COM*
                                               *SERVICES LLC, PRIME NOW, LLC, and*
                                               *WHOLE FOODS MARKET SERVICES, INC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 16, 2021, a copy of the foregoing was served electronically, via CM/ECF, on all counsel of record who are deemed to have consented such service under the Court's local rules. Any other counsel of record will be served via facsimile and certified mail, return receipt requested.

By: */s/Todd R. Gregorian*
Todd R. Gregorian