UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation, <br><br> Defendants. | Case No. 1:19-CV-00885-ADA <br><br><br> PUBLIC VERSION |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

## TABLE OF CONTENTS

Page

I. THE ACCUSED PRODUCTS DO NOT INCLUDE ALL ELEMENTS OF THE ASSERTED CLAIMS AND THUS CANNOT DIRECTLY INFRINGE AS A MATTER OF LAW. ...................................................................................................III

II. *CENTILLION* APPLIES TO FRESHUB'S DIRECT INFRINGEMENT ALLEGATIONS FOR THE '153 PATENT ...................................................................3

III. FRESHUB IDENTIFIES NO INFRINGING WHOLE FOODS PRODUCT ....................7

IV. CONCLUSION ............................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
   324 F. Supp. 3d 470 (D. Del. 2018) ........................................................................................ 7

*Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*,
   No. 16-455-RGA, 2020 WL 1333131 (D. Del. 2020) ............................................................. 7

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011) .................................................................................... 3, 4, 5, 6

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005) ................................................................................................ 6

*ESW Holdings, Inc. v. Roku, Inc.*,
   No. 6:19-cv-44-ADA, 2021 WL 1069047 (W.D. Tex. Mar. 18, 2021)
   (Albright, J.) ............................................................................................................................. 6

*LG Elecs., Inc. v. Asustek Comps.*,
   126 F. Supp. 2d 414 (E.D. Va. 2000) ...................................................................................... 9

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
   No. 16-cv-1266, 2017 WL 2180980 (N.D. Cal. May 18, 2017) .............................................. 6

*Raine v. United States*,
   No. 1:19-cv-231-RP, 2021 WL 1318004 (W.D. Tex. April 8, 2021) ...................................... 1

*Shifferaw v. Emson USA*,
   No. 2:09-CV-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ............................. 9

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
   983 F.3d 1367 (Fed. Cir. 2021) ................................................................................................ 3

**I.     THE ACCUSED PRODUCTS DO NOT INCLUDE ALL ELEMENTS OF THE ASSERTED CLAIMS AND THUS CANNOT DIRECTLY INFRINGE AS A MATTER OF LAW.**

According to Freshub itself, the products it accuses of direct infringement are Amazon Echo, Fire TV, and Fire tablet devices, and the Amazon and Alexa apps running on iOS and Android handheld devices. (Opp. at 2.) According to Freshub itself, the Echo, Fire TV, and Fire tablet devices (and of course the smartphones running the accused apps) are end-user client devices. (*Id.*) For example, as Freshub describes it, an Echo dot "sits on the countertop in a person's kitchen." (*Id.*) And according to Freshub itself, "the brains" of these devices, Amazon's Alexa, resides in the cloud. (*Id.*) Accordingly, it is undisputed that the accused products—Echos, Fire TVs, Fire tablets and the accused apps—are client devices. Alexa is operated on cloud servers, to which the client devices connect.

The only "Accused Products" that Freshub contends directly infringe the asserted claims are client devices—the Echos, Fire TVs and tablets, and mobile apps. Yet it maps some (if not all) elements of all of the asserted claims to components on Alexa servers. Realizing this fatal shortcoming of its infringement mapping, Freshub now argues in its opposition that "the cloud," *i.e.*, the network of interconnected servers running Alexa, is "included in each of the Accused Products." (Opp. at 3.) It is common knowledge—not only among computer scientists but among any users of modern mobile devices—that servers are not "included" in client devices. The servers with which our smart home devices communicate are not "included" in those devices. These servers are not even in our homes. Freshub cannot overcome a motion for summary judgment by making up a concept not rooted in reality. *Raine v. United States*, No. 1:19-cv-231-RP, 2021 WL 1318004, at *2 (W.D. Tex. April 8, 2021) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation . . . are insufficient to defeat a motion for summary judgment."). Indeed, Freshub does not cite even a shred of evidence showing that the Alexa servers are

1


"included" in the end-user devices themselves. They are not, because it is physically impossible.[1]

Regardless, the Court need not decide whether the Alexa cloud is "included" in the end-user devices to grant summary judgment of no direct infringement because the relevant facts are undisputed: Freshub's expert Dr. Medvidović admits that the components he maps to some elements of *all* of the asserted claims are *not* within the accused devices themselves. This alone is sufficient basis for summary judgment.

All of the asserted claims require physical structures, *e.g.*, a "network interface" and "non-transitory memory," that, under Freshub's own mapping, *do not exist* within the accused devices. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[1] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



Accordingly, the accused devices do not include all of the claimed components according to Freshub's own expert.

It is a fundamental principle of patent law that an accused device must contain "*each and every limitation* of the asserted claims." *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021) (emphasis in original, citation omitted). The accused Amazon devices cannot directly infringe because the devices themselves, according to Freshub's own expert, do not include all of the required limitations of any asserted claim. *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

II.  **_CENTILLION_ APPLIES TO FRESHUB'S DIRECT INFRINGEMENT ALLEGATIONS FOR THE '153 PATENT.**

Amazon *also* cannot directly infringe the '153 patent as a matter of law under the Federal Circuit's opinion in *Centillion*. The asserted claims of the '153 patent recite limitations performed by a first computer (the client computer) and a second computer (the server computer).[2]

---

[2] The asserted claims of the other patents only recite limitations on the server side. They all recite either "non-transitory memory that stores instructions" for execution by a server computer to perform the claimed operations (*e.g.*, '810 patent claim 1; '408 patent claims 1, 30; '094 patent

3

Accordingly, to directly infringe the asserted claims of the '153 patent, Amazon must either "combine all of the claim elements" or "control the system as a whole and obtain benefit from it." *Centillion*, 631 F.3d at 1284, 1289. Freshub does not meaningfully dispute that Amazon does either one. It does not dispute that a user must configure the device, purchase a modem and a router, provide and configure a local wireless network and an internet connection, and then make the independent decision to invoke Alexa by speaking to the device. And Freshub does not dispute that the accused devices out of the box simply cannot perform their functions without these user actions; the accused devices are merely paperweights until the user decides to use them, configures them, provisions a network, connects them to the network, and decides to issue voice shopping commands. ███████████████████████████████████████████████████████████████ What Freshub argues instead is that *Centillion* should not apply to its infringement claims. But Freshub is wrong.

The claim at issue in *Centillion* required "a 'back-end' system maintained by the server" and "a 'front-end' system maintained by an end user." [3] This is no different than the claims of the '153 patent. Representative claim 1, reproduced below, requires a first system and another computer system that is remote from the first system, and to which the first system transmits a digitized order. It requires both a front-end system and a back-end system, just like the claims did in

---

claim 20), or a "computer-implemented method" for performing server-side operations (*e.g.*, '408 patent claim 20).

[3] *See Centillion*, 631 F.3d at 1281 ("Claims 1, 8, 10, and 46 are relevant to this appeal. Claim 1 is illustrative and, at a high level, requires 'a system for presenting information ... to a user ... comprising:' 1) storage means for storing transaction records, 2) data processing means for generating summary reports as specified by a user from the transaction records, 3) transferring means for transferring the transaction records and summary reports to a user, and 4) personal computer data processing means adapted to perform additional processing on the transaction records. Centillion concedes that the claim includes both a 'back-end' system maintained by the service provider (claim elements 1, 2, and 3) and a 'front-end' system maintained by an end user (claim element 4).") (omission in original).

4

*Centillion*:

> A voice processing system comprising:
> *a first system* configured to receive user spoken words comprising:
>   a microphone;
>   a wireless network interface;
>   a digitizer coupled to the microphone, wherein the digitizer is configured to convert spoken words into a digital representation;
>   a first computer;
>   non-transitory memory that stores instructions that when executed by the first computer cause the first system to perform operations comprising:
>     receive via the digitizer a verbal order, comprising at least one item, from a user, wherein the verbal order was captured by the microphone and digitized by the digitizer;
>     *immediately transmit*, using the wireless network interface, the digitized order *to a computer system remote from the first system*;
> *the computer system*, the computer system comprising:
>   a networks interface;
>   a second computer;
>   non-transitory memory that stores instructions that when executed by the second computer cause the computer system to perform operations comprising:
>     receive, using the network interface, the digitized order from the first system;
>     translate at least a portion of the digitized order to text;
>     identify an item corresponding to the text;
>     add the identified item to a list associated with the user;
>     enable the list, including the identified item, to be displayed via a user display.

('153 patent, claim 1 (emphasis added).)

The claim also requires that the claimed first system be "configured to receive user spoken words." That configuration is implemented and controlled by the end users. Thus, Freshub's argument that the asserted claims here are different from those in *Centillion* because they require no user action is incorrect. (*See* Opp. at 14.) Regardless, whether user action is *claimed* is irrelevant to the direct infringement analysis under *Centillion*: what matters is whether a claim covers actions performed by separate components and whether those components are combined or

controlled by the same entity. *Centillion*, 631 F.3d at 1288. That is not the case here.

The accused Qwest system in *Centillion* included "back office systems and front-end client applications that a user may install on a personal computer." *Id.* at 1281. Once installed and used, the front-end system was in the possession of the end-user, and the back office system was in the possession of Qwest. Similarly, here, it is undisputed that the accused end-user devices—the Amazon Echo, Fire TV, and Fire Tablet devices and the accused mobile apps—are in the possession of end users (*e.g.*, sitting on countertops in a user's home) and not in the possession of Amazon. It is also undisputed that, just like in *Centillion*, the end-users of the accused devices must configure those devices before they can put them to use. Thus, contrary to Freshub's assertion, both *Centillion* and *Cross Medical* apply here.[4]

Whether Amazon makes, uses, and sells the accused devices and apps is irrelevant to the direct infringement analysis under *Centillion*. The question under *Centillion* is not whether Amazon makes, uses, and sells its own products. The relevant question is whether Amazon puts the *claimed system* into use by "controll[ing] the system as a whole and obtain[ing] benefit from it" or "combine[s] all of the claim elements." *See Centillion*, 631 F.3d at 1284, 1288. As described above, Amazon does neither. Courts routinely find no direct infringement as a matter of law based on similar facts. *See ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-44-ADA, 2021 WL 1069047, at *4-5 (W.D. Tex. Mar. 18, 2021) (Albright, J.) (citing *Centillion*, 631 F.3d at 1288) (where plaintiff accused system consisting of Roku streaming software and user-supplied television, granting summary judgment because Roku did not "control[] each system component recited in [the] claim"); *Personal-Web Techs. LLC v. Int'l Bus. Machines Corp.*, No. 16-cv-1266, 2017 WL 2180980, at *16 (N.D. Cal.

---

[4] In *Cross Medical*, the claim required a "fixation device" that was "operatively joined" to a bone segment. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1299 (Fed. Cir. 2005). Under the plaintiff's theory, to create the claimed fixation device a surgeon had to "actually bring the [part of the supplied device] into contact with bone." *Id.* at 1310.

May 18, 2017) (granting summary judgment of no direct infringement where accused product included "client-side" and "server-side" features, holding IBM did not "use" the claimed system because IBM did not "control or direct the actions" of users/licensees); *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, No. 16-455-RGA, 2020 WL 1333131, at *4-5 (D. Del. 2020) (granting summary judgment of no direct infringement because the "the claimed systems only existed when multiple" parties combined all the claim elements, the end user "need[s] to introduce . . . elements to the system" and "form connections with one another," and holding "[i]f a customer, rather than a defendant company, performs the final step to assemble the system, then the defendant has not infringed") (internal quotation marks omitted, citing *Centillion*, 631 F.3d at 1288); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 480-482 (D. Del. 2018) (granting summary judgment of no direct infringement where "customers take the action that leads to the 'back-end processing'" because "'if the user did not make the [front-end] request, then the back-end processing would not be put into service'").

Freshub cannot prove that the accused Amazon devices and apps directly infringe any of the asserted claims as a matter of law, and no genuine dispute of any material fact precludes the entry of summary judgment of no direct infringement.

### III. FRESHUB IDENTIFIES NO INFRINGING WHOLE FOODS PRODUCT.

In his infringement report, Freshub's expert Dr. Medvidović identifies the accused products for each asserted patent. (Medvidović Rep. at ¶¶ 20, 23, 26, 29.) *None* of those accused products are from Whole Foods. Freshub therefore cannot meet its burden to show infringement by Whole Foods as a matter of law.

Freshub argues that Whole Foods infringes because Dr. Medvidović opines in his report

██████████ But whether the Whole Foods app syncs, reads, displays or does anything else, Dr. Medvidović did not *accuse* that app of infringement anywhere in his report. (Opp. at 17; Medvidović ¶¶ 20, 23, 26, 29.) He does not map the Whole Foods app or anything else from Whole Foods to any asserted claim. Freshub does not dispute this in its opposition. To the contrary, Freshub implicitly admits it when it states that Dr. Medvidović opines that the Whole Foods app "meets *several elements* of the Asserted Claims." (Opp. at 16 (emphasis added).) To infringe, the Whole Foods app must meet *all* of the elements of the asserted claims, not "several."

Freshub argues that its *damages* expert Mr. Reading attributes some portion of the claimed damages to Whole Foods, and suggests that this is sufficient to show infringement by Whole Foods. (Opp. at 17.) But the economic analysis of a damages expert is insufficient to establish direct infringement. Further, Mr. Reading does not actually attribute any damages to Whole Foods; he attributes damages solely to Amazon. He states that *Amazon* tracks sales of its devices in Whole Foods stores, and accounts for this revenue in his damages estimate as to *Amazon*. Indeed, the appendices to Mr. Reading's report (MDR-4 and 5A-C) display damages attributable to "Amazon.com, Inc.," and are drawn from "Amazon.com, Inc. Financial Information." (Ranganath Decl., Ex. 11.) And his appendices establish that any sales of Amazon devices in Whole Foods stores are already accounted for in Mr. Reading's damages estimate for Amazon. (*Id.*) Mr. Reading notes that Amazon has ████████████████████████████████████████ but nowhere suggests that those sales translate to damages Freshub is entitled to *from Whole Foods*. (*See* Ranganath Decl., Ex. 11 at ¶¶ 115, 121, 189, 228; Opp. at 17 (citing same).)

Finally, Freshub argues that Whole Foods infringes through the sale of the accused devices in its stores. But it does not cite a single statement from Dr. Medvidović (or anyone else) opining that Whole Foods infringes based on these sales, because he has no such opinion. And in any

8

event, Freshub cannot recover damages from *both* Amazon and Whole Foods for the same sale. *See Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, *3 (E.D. Tex. Mar. 18, 2010) (plaintiff cannot receive a double recovery of damages from sales by retailers and manufacturers); *LG Elecs., Inc. v. Asustek Comps.*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000) ("If the court does find them liable, and allows LGE to collect royalties from Asustek and Asus, LGE cannot then in turn collect royalties from the entity to whom the infringer sells the product.").

Because Freshub has failed to map all elements of any asserted claim to any product or technology of Whole Foods, it cannot prove infringement as a matter of law.

## IV. CONCLUSION

For these reasons and those set forth in Defendants' motion, the Court should grant their motion for summary judgment of no direct infringement of the asserted patents.

Dated: April 16, 2021                           Respectfully submitted,

*Of Counsel:*

Barry K. Shelton (TX Bar #24055029)
bshelton@sheltoncoburn.com
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Tel: (512) 263-2165
Fax: (512) 263-2166

Deron R. Dacus (TX Bar #00790553)
ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
Fax: (903) 581-2543

*/s/ Ravi R. Ranganath*
J. David Hadden, CSB No. 176148
dhadden@fenwick.com
Saina S. Shamilov, CSB No. 215636
sshamilov@fenwick.com
Todd R. Gregorian, CSB No. 236096
tgregorian@fenwick.com
Ravi R. Ranganath, CSB No. 272981
rranganath@fenwick.com
Vigen Salmastlian, CSB No. 276846
vsalmastlian@fenwick.com
Allen Wang, CSB No. 278953
allen.wang@fenwick.com
Eric B. Young, CSB No. 318754
eyoung@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

*Counsel for Defendants*
*AMAZON.COM, INC., AMAZON.COM SER-*
*VICES LLC, PRIME NOW, LLC, and*
*WHOLE FOODS MARKET SERVICES, INC.*

## **CERTIFICATE OF SERVICE**

The undersigned declares as follows:

I am a citizen of the United States and employed in the City and County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Fenwick & West LLP, 555 California Street, 12th Floor, San Francisco, California 94104. On the date set forth below, I served a copy of the following document(s):

- Reply in Support of Motion for Summary Judgment of Noninfringement (Filed Under Seal);
- Exhibit 12 to Reply Declaration of Ravi R. Ranganath in Support of Defendants' Motion for Summary Judgment of Noninfringement (Filed Under Seal)

on the interested parties in the subject action by placing a true copy thereof as indicated below, addressed as follows:

James Hannah
Lisa Kobialka
Paul J. Andre
Michael Lee
Melissa Brenner
Jenna Fuller
Christina M. Finn
Aakash Jariwala
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Email: jhannah@kramerlevin.com
Email: lkobialka@kramerlevin.com
Email: pandre@kramerlevin.com
Email: mhlee@kramerlevin.com
Email: mbrenner@kramerlevin.com
Email: jfuller@kramerlevin.com
Email: cfinn@kramerlevin.com
Email: ajariwala@kramerlevin.com

Eileen Patt
KRAMER LEVIN NAFTALIS & FRANKEL LLP

John P. Palmer
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Avenue, Suite 800
P.O. Box 1470
Waco, TX 76703-1470
Email: palmer@namanhowell.com

1177 Avenue of the Americas
New York, NY 10036
Email: epatt@kramerlevin.com

| ☑ | **BY E-MAIL:** by causing to be transmitted via e-mail the document(s) listed above to the addressee(s) at the e-mail address(es) listed above. |
|---|---|

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

Date: April 16, 2021                    /s/ Eric B. Young
- Eric B. Young

12