# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| FRESHUB, INC., a Delaware Corporation, and FRESHUB, LTD., an Israeli Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>AMAZON.COM INC., a Delaware Corporation, AMAZON.COM SERVICES, LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation,<br><br>Defendants. | Case No.: 1:19-cv-00885-ADA<br><br>**PUBLIC VERSION** |

**PLAINTIFFS FRESHUB, INC.'S AND FRESHUB, LTD.'S
OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*** 

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Facsimile: (254) 754-6331
palmer@namanhowell.com

*Attorneys for Plaintiffs,*
FRESHUB, INC. and FRESHUB, LTD.

Dated: May 7, 2021

## **TABLE OF CONTENTS**

**Page**

I. DEFENDANTS' OVERALL PROFITS AND FINANCIAL SUCCESS ARE RELEVANT AND REBUT DEFENDANTS' CLAIMS ...................................................... 1

II. DEFENDANTS CANNOT PRECLUDE WILLFULNESS AND DAMAGES EVIDENCE ................................................................................................................ 2

III. DEFENDANTS' UNSUCCESSFUL IPR PETITIONS ARE RELEVANT ...................... 3

IV. ALEXA'S RECORDING AND STORING USER UTTERANCES ARE RELEVANT TO INFRINGEMENT ........................................................................................ 5

V. DR. COLE'S OPINION RELATES TO HIS LICENSING ANALYSIS .......................... 6

VI. REFERENCE TO WHOLE FOODS, INCLUDING ANY PRE-SUIT MEETINGS BETWEEN PLAINTIFFS/IKAN AND WHOLE FOODS IS RELEVANT .................... 7

VII. RELATIVE SIZE OF THE PARTIES IS RELEVANT TO DAMAGES.......................... 8

VIII. REFERENCES TO THE PRESUMPTION OF VALIDITY ARE APPROPRIATE ...... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017)..............................................................................................2

*Chrimar Holding Co. v. ALE USA Inc.*,
   732 F. App'x 876 (Fed. Cir. 2018) .........................................................................................2

*Cooper Tire & Rubber Co. v. Farese*,
   No. 3:02-CV-210-SA-JAD, 2008 WL 5382416 (N.D. Miss. Dec. 19, 2008) ...........................9

*Fairfield Indus., Inc. v. Wireless Seismic, Inc.*,
   No. 4:14-cv-2972, 2015 WL 1034275 (S.D. Tex. Mar. 10, 2015) ...........................................4

*Freeny v. Fossil Group, Inc.*,
   No. 2-18-cv-00049-JRG-RSP, Order on Motions in Limine, Dkt. No. 210
   (E.D. Tex., Jul. 24, 2019).................................................................................................8, 9

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
   No. C 03-1431 SBA, 2006 WL 1330003 (N.D. Cal. May 15, 2006) .......................................5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)...........................................................................................................2

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   No. 2:07-CV-00331-PMP, 2013 WL 4458754 (D. Nev. Aug. 16, 2013), *aff'd*,
   769 F.3d 1371 (Fed. Cir. 2014)..............................................................................................5

*Intellectual Ventures II LLC v. FedEx Corp.*,
   No. 2:16-cv-00980-JRG, 2018 WL 10638138 (E.D. Tex. Apr. 26, 2018) ...............................9

*Ion, Inc. v. Sercel, Inc.*,
   No. 5:06-cv-236, 2009 WL 10677800 (E.D. Tex. July 22, 2009) .........................................10

*Johns Hopkins Univ. v. Alcon Lab'ys Inc.*,
   No. CV 15-525, 2018 WL 4178159 (D. Del. Aug. 30, 2018) .............................................1, 6

*L.C. Eldridge Sales Co. v. Azen Mfg. Pte., Ltd.*,
   No. 6:11CV599, 2013 WL 7964028 (E.D. Tex. Nov. 14, 2013).............................................4

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
   No. 7-09-cv-00029, 2011 WL 7575006 (N.D. Tex. June 10, 2011)......................................10

*Mendenhall v. Cedarapids, Inc.*,
   5 F.3d 1557 (Fed. Cir. 1993)..................................................................................................5

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011) .............................................................................................................. 4, 10

*Novo Nordisk A/S v. Becton Dickinson & Co.*,
    304 F.3d 1216 (Fed. Cir. 2002) ................................................................................................ 10

*PalTalk Holdings, Inc. v. Microsoft Corp.*,
    No. 2:06-CV-367 (DF), 2009 WL 10677719 (E.D. Tex. Mar. 8, 2009) ..................................... 1

*Rogers v. Medline Indus., Inc.*,
    No. 1:17-cv-118-HSO-RHW, 2019 WL 402361 (S.D. Miss. Jan. 31, 2019) ........................... 10

*S.E.C. v. Johnson*,
    525 F. Supp. 2d 66 (D.D.C. 2007) .............................................................................................. 3

*Univ. Elecs., Inc. v. Univ. Remote Control, Inc.*,
    No. SACV 12-00329 AG, 2014 WL 8096334 (C.D. Cal. Apr. 21, 2014) .............................. 3, 5

*WesternGeco LLC v. ION Geophysical Corp.*,
    No. 4-09-cv-01827, 2012 WL 2911968 (S.D. Tex. July 16, 2012) .......................................... 10

**Statutes**

35 U.S.C. § 282 .................................................................................................................................. 10

35 U.S.C. § 307 .................................................................................................................................... 4

I. **DEFENDANTS' OVERALL PROFITS AND FINANCIAL SUCCESS ARE RELEVANT AND REBUT DEFENDANTS' CLAIMS**

Evidence of Defendants' overall profitability and financial success is relevant to Freshub's damages case and is necessary to rebut Defendants' claim that the parties would have agreed to a lower royalty because ▉▉▉▉▉. *See, e.g.*, Declaration of Christina Finn ("Finn Decl,") filed herewith, Ex. 1 (Reading. Tr.) at 48:5-49:18 (seeking admission that ▉▉▉▉▉). Relevant to the hypothetical negotiation is the fact that ▉▉▉▉▉

▉▉▉▉▉

▉▉▉▉▉. *See e.g.*, Dkt. No. 169-2 (Reading Rpt.) at ¶¶ 196-197, 200-204; *id.* at p. 83, ¶ 18. Specifically, at the hypothetical negotiation, the parties knew that ▉▉▉▉▉

▉▉▉▉▉

▉▉▉▉▉

▉▉▉▉▉." *Id.* at ¶ 200; *id.* at p. 83, ¶ 18; *see also id.* at MDR-3.

This evidence is highly probative of what Defendants would have agreed to at the hypothetical negotiation and necessary to rebut Defendants' claims that ▉▉▉▉▉ ▉▉▉▉▉. The Court should reject Defendants' attempt to hamstring Freshub at trial. *See PalTalk Holdings, Inc. v. Microsoft Corp.*, No. 2:06-CV-367 (DF), 2009 WL 10677719, at *2 (E.D. Tex. Mar. 8, 2009) (denying motion *in limine* because evidence may be relevant to *Georgia-Pacific* analysis); *see also Johns Hopkins Univ. v. Alcon Lab'ys Inc.*, No. CV 15-525, 2018 WL 4178159, at *7 (D. Del. Aug. 30, 2018) (denying motion *in limine* and permitting evidence relevant to, *e.g.*, cross-examination of damages expert).

Further, Defendants rely on their overall financial success in their case. For example, Defendants' damages expert Mr. Bakewell relies on a spreadsheet—prepared for this litigation—that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████." Dkt. No. 169-3 (Bakewell Rpt.) at ¶ 245; *see also Chrimar Holding Co. v. ALE USA Inc.*, 732 F. App'x 876, 889 (Fed. Cir. 2018) (proper to allow testimony regarding defendants' total revenue and profit when defendant opened door). He also relies on and describes Amazon's overall success and reasons for it. Dkt. No. 169-3 at ¶¶ 250-258.

None of the case law Defendants cite exclude evidence relating to overall profits or financial success under the circumstances here, where it is necessary to rebut Defendants' claims and is highly relevant to the hypothetical negotiation in view of Defendant's business strategies.

## II. DEFENDANTS CANNOT PRECLUDE WILLFULNESS AND DAMAGES EVIDENCE

Defendants seek to preclude highly relevant evidence concerning willfulness by couching its Motion in the Penal Code. Freshub will not tell the jury that Defendants engaged in "criminal conduct." Motion at 2-3. However, the concept of an intentional trespass against patent rights is part and parcel of the willfulness standard without having anything to do with the Penal Code. *See Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (infringer "**actually knew or should have known** that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.") (citation omitted) (emphasis in original); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) (actionable conduct is "willful, wanton, malicious, bad-faith…").

Further, an Amazon license at issue in this case involves Nucleus, a partner of Freshub, where Amazon entered into the agreement after Nucleus alleged that Amazon copied its

technology and infringed its patents after Amazon invested in Nucleus. Freshub's expert, Dr. Cole, will testify regarding the license Amazon took—which Amazon identified as relevant—as a result of those accusations to rebut Amazon's claim that it was not interested in the technology of Freshub or Ikan, based on Amazon's business practices. Dkt. No. 119-2 (Cole Rpt.) at ¶¶ 57-58, 64-65. Dr. Cole opines ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████ *Id.* at ¶ 57. This evidence is relevant to damages and willfulness and is admissible, and Defendants cannot avoid it because it references Nucleus's copying allegations. *See S.E.C. v. Johnson*, 525 F. Supp. 2d 66, 69 n.3 (D.D.C. 2007) (allowing testimony regarding industry practice "drawn from many years of experience").

### III. DEFENDANTS' UNSUCCESSFUL IPR PETITIONS ARE RELEVANT

The PTAB decisions denying Defendants' IPR petitions are relevant and courts have permitted evidence of them at trial. *Univ. Elecs., Inc. v. Univ. Remote Control, Inc.*, No. SACV 12-00329 AG, 2014 WL 8096334, at *7 (C.D. Cal. Apr. 21, 2014) (denial of institution permitted at trial). Here, Defendants submitted the IPRs, advancing a number of unsuccessful positions, which are also at issue here. Dkt. Nos. 107-16, 107-17, 107-18, and 107-19; *see also* Dkt. No. 106 at 3-4 (describing procedural history). For example, the PTAB's decisions denying institution of these IPRs resulted from some of the same references that Defendants intend to assert at trial, including Calderone, Kuhn, and Partovi. Dkt. No. 106 at 6-8 (Freshub's Summary Judgment Motion regarding asserted art that is the same or substantially the same). The PTAB rejected Defendants' claims that these references taught the claimed elements of the '094, '408, and '810 Patents on the merits. Dkt. Nos. 107-16, 107-17, 107-18, and 107-19.

Also, the alleged Nuance OMS and HeyAnita "prior art systems" that Defendants intend to rely on at trial could have been asserted in the IPRs and are cumulative to what was before the PTAB. *See* Dkt. No. 106 at 7-8; Finn Decl., Ex. 2 (Polish Rpt.) at ¶¶ 90, 96 (Nuance OMS and HeyAnita are cumulative art). Further, Freshub's validity expert, Dr. Nathaniel Polish, relies on the IPRs as it is part of the prosecution history and opines that, because Defendants invalidity positions are the same as those they asserted in the IPRs, they have the same deficiencies. *See e.g.*, Finn Decl., Ex. 2 (Polish Rpt.) at ¶¶ 206-207, 210 (Defendants' invalidity analysis is what the PTAB rejected). This is no different than an expert relying on an examiner's reasoning during prosecution of the claims, as IPRs are an integral part of the intrinsic history for a patent. *See e.g.*, 35 U.S.C. § 307; *Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, No. 4:14-cv-2972, 2015 WL 1034275, at *5 (S.D. Tex. Mar. 10, 2015) (IPRs are part of the intrinsic record).

Further, the PTAB applied a "reasonable likelihood" standard in considering Defendants' invalidity claims, which *favors* admitting the denial decisions into evidence, where Defendants must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (proving invalidity is by clear and convincing evidence). The fact that Defendants could not establish a reasonable likelihood of invalidity utilizing the same references rebuts Defendants' invalidity challenges. *See L.C. Eldridge Sales Co. v. Azen Mfg. Pte., Ltd.*, No. 6:11CV599, 2013 WL 7964028, at *3 (E.D. Tex. Nov. 14, 2013) ("the risk of confusion is minimal because a lower threshold of proof is required to show invalidity before the USPTO than is required by Defendants in this Court.").

Appropriately worded jury instructions can address any concerns regarding confusion or prejudice, to the extent necessary. *See Univ. Elecs.*, 2014 WL 8096334, at *7 ("[a]ny potential confusion [regarding the PTO's rejection of Defendants' IPR petitions] can be addressed by

4

appropriate jury instructions"); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 2:07-CV-00331-PMP, 2013 WL 4458754, at *15 (D. Nev. Aug. 16, 2013), *aff'd,* 769 F.3d 1371 (Fed. Cir. 2014) ("[t]he Court's instructions [regarding final PTO decisions on reexam] during trial and at the close of evidence cured the potential prejudice"); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2006 WL 1330003, at *4 (N.D. Cal. May 15, 2006) (permitting reexamination decisions because "any prejudicial effect on the jury could be alleviated by the appropriate jury instructions"); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1563-64 (Fed. Cir. 1993) (upholding the district court's jury instruction on "what weight to give the Patent Office's determination" and "the evidence presented to the Patent Office.").

## IV. ALEXA'S RECORDING AND STORING USER UTTERANCES ARE RELEVANT TO INFRINGEMENT

Freshub does not intend to introduce evidence that Defendants are spying on its customers. To the extent Defendants seek to exclude relevant infringement evidence regarding Defendants' recordings of user voice interactions, Defendants' motion should be denied.

An element of Freshub's infringement case is the fact that the Accused Products are constantly listening (for "wake" words) and recording sounds close by the products. Recording and storing user utterances are features of the Accused Products that meet the claim language of the Asserted Patents. *See, e.g.,* Dkt. No. 103-3 (Medvidovic Rpt.) at ¶ 245 (Echo meets Claim 1 of the '408 Patent because it records the audio heard by microphones and transmits it to Alexa); *id.* at ¶ 381 (███████████████████████████████████████████████████████████████); *id.* at ¶ 640 (███████████████████████████████████████████████████████████████); *id.* at ¶ 913 (the Echo meets Claim 24 of the '094 Patent because it captures and records "the user's spoken words upon detection of the wake word" and "Alexa

5

saves recorded user interactions"). ██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ Thus, its direct relevance to infringement outweighs any potential prejudice. *Johns Hopkins*, 2018 WL 4178159, at *16-17 (denying motion to exclude Defendants' emails discussing Defendants' targeting of competition because they are relevant to infringement and willfulness and probative value was not "'substantially outweighed' by a danger of unfair prejudice.").

## V.     DR. COLE'S OPINION RELATES TO HIS LICENSING ANALYSIS

Defendants seek to exclude the background discussion of Dr. Cole's report related to the operation of Defendants' applications, namely paragraphs 29-33, which is where Dr. Cole provides the necessary context to support his opinions related to the comparability of technology of various licenses. *See* Dkt. No. 119-2 (Cole Rpt.) at ¶¶ 29-33. Specifically, Dr. Cole considers the licensed technologies in a number of licenses that Defendants identified as relevant for damages and does a technological comparison. Thus, this background section sets the stage for Dr. Cole's opinions, namely that the technology of Amazon's identified licenses are not *comparable* to the technologies at issue, which is relevant to damages. For example, Dr. Cole provides opinions that the licenses Amazon identified as relevant "have no relationship to a distributed voice processing system." *Id.* at ¶¶ 67, 71, 73. Thus, Dr. Cole's background in his expert report are relevant to damages and helpful for the trier of fact to understand the nature of infringing voice-processing functionality that is at issue in this case.

## VI. REFERENCE TO WHOLE FOODS, INCLUDING ANY PRE-SUIT MEETINGS BETWEEN PLAINTIFFS/IKAN AND WHOLE FOODS IS RELEVANT

Whole Foods is accused of infringement and Freshub's meetings with Whole Foods are relevant to willfulness and damages. Freshub's infringement expert, Dr. Medvidović, explains that the Alexa shopping list generated by Alexa can sync to a user's account in the Whole Foods app, so that the app adds items to the cart and displays the real-world item that is the best match for the translated text of the user's words. Dkt. No. 103-3 (Medvidović Rpt.) at ¶¶ 197, 340, 488, 600, 711, 891. He also explains that a customer may access the Alexa shopping list via the Whole Foods app. *Id.* at ¶¶ 223, 920, 923; *see also* Finn Decl., Ex. 5 (D'Souza Tr.) at 13:11-14:11 (describing that the Whole Foods app will display the Alexa shopping list), 23:2-20 (describing adding items to a cart and receiving a text message). Thus, Defendants' assertion that Dr. Medvidovic does not map the claims to Whole Foods technology is thus false. The fact that the Whole Foods app displays lists, provides access to lists, and identifies items corresponding to list items demonstrates that it is an integral part of the Alexa cloud system and meets several limitations of the Asserted Claims. *See, e.g.,* Dkt. No. 103-3 (Medvidović Rpt.) at ¶¶ 197, 225, 340, 356, 360, 362, 364, 711, 749, 753, 755, 757, 891, 906, 909.

Whole Foods also infringes because ███████████████████████████████████████████████████████████████████████. *Id.* at ¶¶ 91, 144, 176, 199, 288, 319, 342, 436, 467, 580, 602, 659, 690, 713, 840, 871, 893; *see also* Dkt. No. 137-5 (Portman. Tr.) at 157:15-160:22, 266:3-269:1 (███████████████████████████████████████████).

███████████████████████████████████████████████████████████████████████

███████████████████████████████. *See, e.g.,* Dkt. No. 103-3 (Medvidović Rpt.) at ¶¶ 140, 286, 659, 690, 686, 867.

The meetings with Whole Foods relate to willfulness and damages. ***First***, both Freshub and its parent company, Ikan, had meetings with Amazon, where they demonstrated their patented technologies, and Ikan provided Amazon with one of its products with patented technology about a year before Amazon began developing its first Echo product. Defendants ignore that at the time of Amazon's interactions with Ikan in 2010, the application for Ikan's U.S. Patent No. 9,821,344 (the "'344 Patent")—the parent of the Asserted Patents—was active and publicly available, along with several other Ikan patents that similarly related to voice shopping technology. Dr. Cole opines that a reasonable company would have investigated and monitored relevant patent applications of companies who have technology that they are interested in, particularly where they are meeting with and receiving demonstrations of the technology. *See* Dkt. No. 119-2 (Cole Rpt.) at ¶¶ 43, 48-49. ***Second***, Freshub's presentations to Whole Foods are highly relevant to Mr. Reading's reasonable royalty rate analysis, as he considered them under *Georgia Pacific* factor 12 as part of his reasonable royalty rate analysis. *See* Dkt. No. 169-2 (Reading Rpt.) at ¶¶ 233-249. ***Third***, ███████████████████

████████████████████████████████████████████████████████████████████████

████████. *Id.* at ¶ 115. Thus, evidence relating to Whole Foods is relevant to infringement, willfulness, and damages.

## VII.   RELATIVE SIZE OF THE PARTIES IS RELEVANT TO DAMAGES

The relative size of the parties is highly relevant; it goes to the heart of the parties' commercial relationship and bargaining power at the hypothetical negotiation. *See Freeny v. Fossil Group, Inc.*, No. 2-18-cv-00049-JRG-RSP, Order on Motions in Limine, Dkt. No. 210 at 3 (E.D. Tex., Jul. 24, 2019) (denying motion *in limine* "as to relative size expressed without any

8

dollar amounts") (Finn Decl., Ex. 6). Indeed, both parties' damages experts consider such evidence in their *Georgia Pacific* analyses. *See* Dkt. No. 169-2 (Reading Rpt.) at ¶¶ 183-187 (parties' size and "market reach" under *Georgia-Pacific* indicate an inventor-promoter commercial relationship at the hypothetical negotiation); *see also id.* at p. 82, ¶¶ 13-14; Dkt. No. 169-3 (Bakewell Rpt.) at ¶¶ 210-212, 250-258 (considering Ikan "would need Amazon in order to commercialize its patent rights" and explaining Amazon's vast resources). Furthermore, the fact that Amazon is one of the largest companies in the world (which is not a secret) with extensive resources is relevant to rebut Defendants' assertion that the infringing technology is of "limited value" because small start-ups, Freshub and Ikan, were allegedly "unsuccessful" in commercializing their patent-practicing products. Dkt. No. 169-3 (Bakewell Rpt.) at ¶¶ 118-126 (characterizing Freshub and Ikan's commercialization efforts); *see also id.* at ¶¶ 250-258 (describing Amazon's resources and success). Amazon's relative size and resources are relevant to explain this "success" disparity.

Defendants' cases do not support its Motion. The court in *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-00980-JRG, 2018 WL 10638138, at *4 (E.D. Tex. Apr. 26, 2018) did ***not*** issue the broad ruling Defendants assert here; rather, plaintiff was "not permitted to ***denigrate*** Defendants by painting a David and Goliath scenario"—thus abusing evidence of size for no relevant purpose—and defendants were likewise prohibited from denigrating plaintiff. *Id.* (emphasis added). Defendants' remaining two cases are inapposite, non-patent cases. *Cooper Tire & Rubber Co. v. Farese*, No. 3:02-CV-210-SA-JAD, 2008 WL 5382416, at *3 (N.D. Miss. Dec. 19, 2008) (contract case denying motion *in limine* to the extent that discussion of damages "must necessarily" include finances and revenue even if it tends to show company is large and

9

doing well); *Rogers v. Medline Indus., Inc.*, No. 1:17-cv-118-HSO-RHW, 2019 WL 402361, at *4 (S.D. Miss. Jan. 31, 2019) (labor/employment case where relative size is not relevant).

### VIII. REFERENCES TO THE PRESUMPTION OF VALIDITY ARE APPROPRIATE

The presumption of validity will be an issue before the jury who will be instructed on Defendants' burden of proving invalidity by clear and convincing evidence. 35 U.S.C. § 282; *Microsoft,* 564 U.S. at 96-97 (alleged infringer asserting invalidity "must contend with the first paragraph of §282…"). Indeed, it is helpful to a jury to know about the presumption of validity to better understand why the burdens are different for Freshub and Defendants in this case. *See e.g.*, *Ion, Inc. v. Sercel, Inc.*, No. 5:06-cv-236, 2009 WL 10677800, at *3 (E.D. Tex. July 22, 2009) (finding that presumption of validity is helpful for jurors); *see also WesternGeco LLC v. ION Geophysical Corp.*, No. 4-09-cv-01827, 2012 WL 2911968, at *4 (S.D. Tex. July 16, 2012) ("This presumption [of validity] is inextricably linked to Defendants' burden to prove invalidity by clear and convincing evidence. The Court finds that [it] is not only appropriate information for the jury, but that it is helpful.").

There is no likelihood of confusion by a jury because the statutory presumption states the burden requirement plainly. *See e.g.*, *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, No. 7-09-cv-00029, 2011 WL 7575006, at *7-8 (N.D. Tex. June 10, 2011) (allowing a jury to hear references to the statute and to the presumption of validity). Further, it is not error to include jury instructions regarding the presumption of validity. *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1220 (Fed. Cir. 2002) (district court did not err in instructing the jury on the presumption). Accordingly, reference to the "presumption of validity" should be permitted as it is part of the Patent Statute and will aid the jury in understanding the reason for the different burdens of proof.

10

                                  Respectfully submitted,

Dated: May 7, 2021                  By: */s/ Lisa Kobialka*
                                        Paul J. Andre (*Pro Hac Vice*)
                                        Lisa Kobialka (*Pro Hac Vice*)
                                        James Hannah (*Pro Hac Vice*)
                                        KRAMER LEVIN NAFTALIS
                                          & FRANKEL LLP
                                        990 Marsh Road
                                        Menlo Park, CA 94025
                                        Telephone: (650) 752-1700
                                        Facsimile:  (650) 752-1800
                                        pandre@kramerlevin.com
                                        lkobialka@kramerlevin.com
                                        jhannah@kramerlevin.com

                                        John Palmer
                                        Texas Bar No. 15430600
                                        NAMAN HOWELL SMITH & LEE PLLC
                                        400 Austin Ave., Suite 800, P.O. Box 1470
                                        Waco, TX 76703
                                        Telephone: (254) 755-4100
                                        Facsimile: (254) 754-6331
                                        palmer@namanhowell.com

                                        *Attorneys for Plaintiffs,*
                                        FRESHUB, INC. and FRESHUB, LTD.

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 11, 2021, the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send a Notice of Electronic filing on all counsel of record for all other parties who have appeared in this action on the date of such service.

*/s/ Lisa Kobialka*
Lisa Kobialka